**Edna Lee EVANS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 55765.**

Supreme Court of Missouri,
Division No. 1.

June 14, 1971.

Motion for Rehearing or to Transfer to Court
En Banc Denied June 28, 1971.

George R. Wilhoit, Jr., Hyde, Purcell & Wilhoit, Poplar Bluff, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

This is a proceeding under Criminal Rule 27.26, V.A.M.R., to vacate and set aside a judgment of conviction and sentence of life imprisonment imposed upon Edna Lee Evans by the Circuit Court of Butler County on October 28, 1968, upon a plea of guilty to a charge of murder in the first degree. The original motion to vacate as amended alleged six grounds, four of which were abandoned during the proceedings. The motion was tried and an evidentiary hearing conducted by a circuit judge transferred to sit in the place of the sentencing judge, who was disqualified. Findings of fact and conclusions of law were filed and the motion was overruled.

On this appeal Evans seeks a reversal of the judgment on the ground that the trial court's findings, conclusions and judgment are clearly erroneous for two alleged reasons: That the evidence clearly proved (1) that appellant was mentally incompetent to enter a plea of guilty, and the sentencing judge failed to determine the mental competence of appellant to enter a plea of guilty and thereby failed to ascertain whether the plea was voluntary, and (2) that appellant's request that his court-appointed counsel be dismissed was erroneously denied.

### I.   Mental Incompetence?

Appellant contends that he was mentally incompetent to make the decision to plead guilty; that the record shows that he was and is mentally deficient and retarded; that he has the mind of a child, with an IQ of 69; that he is on the borderline range of intellectual functioning; that he cannot read and write, is psychotic, becomes profoundly depressed and has often done harm to others and to himself; that he cannot competently handle sums of money larger than $10; that one medical record shows that "he may not make good decisions when his emotions interfere, at which time he may become impulsive"; that he did not understand what he was doing when he pleaded guilty and that he did not do so

voluntarily. Appellant cites State v. Williams, Mo.Sup. en banc, 361 S.W.2d 772, for the proposition that in taking a plea of guilty in a capital case the sentencing court "should proceed with care, cautioning the defendant as to the gravity of his admission and making sure that he voluntarily and understandingly desires to enter a plea of guilty." Appellant claims that the sentencing judge made no such inquiry and that appellant's plea of guilty was not freely and voluntarily made, but was entered with misapprehension and as a result of fear and persuasion. Support for the latter is said to lie in appellant's testimony that his counsel told him and he believed that a life sentence was better than 25 years; that he did not understand that he might have to spend the rest of his life behind bars. Appellant counts on Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, for the proposition that the acceptance of a guilty plea without an affirmative showing that the plea was intelligently and voluntarily made violates the Constitution and refers to State v. Edmondson, Mo.Sup., 438 S.W.2d 237, and State v. Roach, Mo.Sup., 447 S.W.2d 553, contending that virtually none of the guidelines laid down in the latter case were followed.

We have concluded that the trial court's findings that appellant was mentally competent to enter a plea of guilty on the date the plea was entered and that the plea was voluntarily and understandably made are not clearly erroneous but are supported by the following evidence:

Pursuant to an order for a mental examination under § 552.020, RSMo 1969, V.A.M.S. appellant was examined at State Hospital at Fulton by Drs. Jack C. Cotton and Elmer C. Jackson, who made a written report to the court in which they concluded that appellant did not have a mental disease or defect within the meaning of § 552.020; that he had the capacity to understand the proceedings against him and to assist in his own defense, and that he knew and appreciated the nature, quality and wrongfulness of the offenses with which he was

charged (two first degree murders). The report indicated that tests failed to show any indication of an organic process or of a psychosis; that appellant is fully aware of the proceedings against him and knows what he did was wrong; that although tests indicate borderline intelligence "his intellect is not so severely impaired as to prevent him from knowing that what he did was wrong or from conforming his actions to the requirements of law"; that there is no reason to believe that he was not responsible for his actions at the time of the shooting incident. Commenting on the fact that appellant had been a patient at Farmington State Hospital, with a diagnosis on admission of mental deficiency, idiopathic, moderate with psychosis, and that he had been finally discharged from the rolls of that hospital in March, 1967, the Fulton doctors recited that "there was nothing in his behavior while he was a patient in this hospital that would lead one to believe that he was psychotic at the time of the examination here or at the time of the offense charged * * *." This report was in the hands of the sentencing judge prior to and at the time of sentence. Appellant's attorney, after examining appellant's medical records at the two hospitals, discussed the doctors' conclusions with appellant, and advised him to plead guilty to one of the two murder charges in the hope of receiving a life sentence, rather than stand trial on two separate first degree murder charges in which counsel, on review of the evidence after a thorough investigation of the facts, considered that appellant had no defense. Appellant's attorney represented him at the preliminary hearing and talked with him about the case numerous times. He had conferred several times with appellant about two defenses suggested by appellant: insanity, and justification based on some kind of a theory that he should be excused becasue the woman he killed was his former fiancee and the man he killed had become her boy friend, and that they had been dating. Counsel advised appellant that mere nervousness and the fact that he had been

an inmate at Farmington would not constitute a legal defense of insanity; that the testimony of the Fulton doctors would preclude the defense, and that the suggested justification constituted no defense. Counsel further advised him that the facts were such as to inflame a jury and that if he submitted the case to a jury there was a risk that the death penalty would be inflicted. He advised appellant that the only two punishments he could receive on a first degree murder charge were life imprisonment or death, and that the best thing that could be done would be to take steps to avoid the death penalty. He recommended that appellant plead guilty if they could get one of the first degree murder charges dismissed and a recommendation of life imprisonment on the other. This is what happened. Appellant's attorney testified that he would not classify appellant's difficulty as retardation or lack of intelligence as much as an emotional and nervous problem; that appellant could be articulate and knowledgeable and could discuss things intelligently; that in his opinion appellant was competent to assist in the preparation of his defense, if he had a defense, but, according to counsel's evaluation of the case there was no defense. At the hearing at which appellant entered his plea the sentencing judge made inquiries calculated to ascertain whether appellant understood the nature of and the factual basis for the charge. The charge was read to appellant. Twice appellant upon inquiry stated affirmatively that he understood the nature of the charge against him. The prosecuting attorney outlined the factual background and introduced in evidence the transcript of the preliminary hearing. Appellant, present at all times during these proceedings, admitted the truthfulness of the factual statement made by the prosecuting attorney.

The foregoing constitutes a sufficient basis for a finding that the sentencing court complied with the requirement of Criminal Rule 25.04, V.A.M.R. that the court shall not accept a plea of guilty without first determining that the plea is made voluntarily

and with understanding of the nature of the charge. The court of course must be satisfied that the defendant knows what he is doing and has sufficient understanding to comprehend the consequences of his plea. In making that appraisal the sentencing judge had the benefit of the direct questioning of appellant and in addition had before him the opinions of the medical experts indicating that appellant had the requisite understanding. There was no record finding that the plea was made voluntarily and with understanding but a record finding of the fact under the circumstances of this case was not necessary.

With respect to the claim that appellant was mentally retarded: While mental retardation may be of such a degree that it would exclude fitness to stand trial, it is a relative term, and retardation in some degree does not automatically exclude fitness to stand trial. It depends upon the degree. Retardation may be of such a degree as to have no effect on accused's fitness to stand trial. State v. Lowe, Mo.Sup., 442 S.W.2d 525[4]. That appears to have been the situation here, according to the Fulton doctors.

■ Appellant claims that he was misled by his attorney's advice that "a life sentence is better than 25 years." This claim is based upon appellant's testimony, which was specifically contradicted by appellant's attorney, who denied making that statement. The trial court had the right and duty to resolve this conflict in the testimony, and could and evidently did disbelieve appellant's testimony in this respect. We defer to that finding. Walster v. State, Mo. Sup., 438 S.W.2d 1.

## II. Right to new counsel?

■ Appellant testified that he requested the circuit judge to dismiss Messrs. Ted. M. Henson, Sr. and Ted M. Henson, Jr., his court-appointed counsel, and appoint new lawyers for him, because he wanted a jury trial and "all my lawyers wanted to do was to cop out." By "cop out" he meant to plead guilty. Appellant testified that at the start he told the attorneys that he wanted to go to trial, and they talked to him urging that he take a plea; that appellant's mother "said it would be better"; that "everybody talked to me to go the other way." Finally, this exchange took place: "Q That was after he [Mr. Henson, Jr.] had talked to you, these various discussions with you, you then voluntarily, in your own mind, decided to plead guilty, is that right? A After all of them talked me into it." This indicates that appellant's decision to plead guilty was voluntary. There is nothing in the record to indicate that the court-appointed attorneys were derelict in their duties or that they did or omitted to do anything which would warrant their dismissal or entitle accused to the assignment of new counsel. On the contrary, it appears that they discharged their duties diligently and with professional competence and that the advice they gave appellant was well-reasoned and lawyerlike. The fact that the accused disagreed with the advice given him by his attorneys is no sufficient basis upon which to entitle him to a change of lawyers. "The constitutional right to counsel does not mean that an accused is entitled to any particular attorney, or that during trial he can arbitrarily discharge his attorney without reason or justification." State v. Williams, Mo.Sup., 419 S.W.2d 49, 54. The court did not err in refusing to discharge appellant's counsel.

Judgment affirmed.

WELBORN, and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.