STATE of Missouri, Respondent,

v.

Ellis EATON, Jr., Appellant.

No. 57593.

Supreme Court of Missouri,
Division No. 2.

Dec. 10, 1973.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 23, 1974.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Clevenger & Lay, William D. Lay, Platte City, for appellant.

HOUSER, Commissioner.

On December 13, 1971 Ellis Eaton, Jr. appealed from a judgment entered upon a jury verdict finding him guilty of burglary in the second degree and stealing, and sentencing him to a term of 5-years' imprisonment on each charge, the terms to run consecutively.

Two briefs have been filed on appeal, one by appellant acting pro se, the other by court-appointed counsel.

■ In his pro se brief appellant first asserts that the court was without jurisdiction to impose judgment and sentence and that all proceedings are void because no complaint was filed in the magistrate court, as required by Rule 21.08, V.A.M.R., and § 544.020, RSMo 1969, V.A.M.S. This assertion is without foundation. This prosecution was commenced by filing in the magistrate court a paper writing denominated "Affidavit for State Warrant," subscribed and sworn to by the prosecuting attorney before the magistrate judge, deposing that on August 16, 1971 in Platte County, Ellis Eaton, Jr. wilfully, etc. broke and entered the building of Billy D. Rule located at 128th Street and N.W. Skyview with felonious, etc. intent to steal certain goods, etc. kept in said building and did feloniously, etc. steal two rifles and a revolver, specifically described, of the value of over $50, the personal property of said Rule, with felonious intent to deprive the owner of their use and to convert same to his own use, contrary to form of the statute and against the peace and dignity of the State of Missouri. Although denominated "Affidavit for State Warrant" (instead of "Complaint") the paper constituted a good and valid complaint, written in sufficient detail to properly and fully notify and inform the defendant of the crimes of burglary and stealing of which he was being accused, and sufficient to comply with the court rule and statutory provisions relating to complaints.

■ Acting pro se, appellant asserts that the information is fatally defective for failure to identify the building that was burglarized, citing State v. Dale, 141 Mo. 284, 42 S.W. 722 (1897), which held that an indictment for second degree burglary of a building designated in the then-existing statute (shop, store, booth, tent, warehouse, etc.), in describing the building, must employ the statutory word (as shop, store, etc.) and if to such place the statute adds a descriptive phrase, it must be alleged. The statute construed in State v. Dale was repealed in 1899, and State v. Dale was overruled in State v. Linders, 299 Mo. 671, 253 S.W. 716, 719 (1923). Present § 560.070, RSMo 1969, V.A.M.S., under which appellant was prosecuted, reads as follows in pertinent part: "Every person who shall be convicted of breaking and entering any building, the breaking and entering of which shall not be declared by any statute of this state to be burglary in the first degree, * * * shall, on conviction, be adjudged guilty of burglary in the second degree." "[T]he dwelling house of another, in which there is at the time some human being," is the statutory description of the building the breaking and entering of which is declared to be burglary in the first degree under § 560.-040, RSMo 1969, V.A.M.S. The instant information as amended describes the building alleged to have been burglarized as "a building located at 128th Street near N.W. Skyview, the property of Billy D. Rule, * * * [in which] certain goods, wares, merchandise or personal property [were] then and there kept and deposited." This is sufficient, it not being necessary to allege a negative, i. e., that the building is not the dwelling house of another, in which there is not at the time some human being; sufficient to give appellant notice of what building he was charged with hav-

ing burglarized, to enable him to prepare his defense, and to bar subsequent prosecution for the same offense. In State v. Person, 234 Mo. 262, 136 S.W. 296, 297 [1] (1911), a second degree burglary prosecution under the statute which is now § 560.-070, an information describing the building as "a certain beerhouse of one R. C. Knight, the same being a building in which beer, goods, and merchandise, and other valuable things were then and there kept and deposited," was held "entirely sufficient to charge an offense under this section." The instant description went further and not only located the building on 128th Street but also alleged its nearness to N.W. Skyview. In State v. Sallee, 436 S.W.2d 246 (Mo.1969), a second degree burglary case, the information alleged that the dwelling house burglarized was the property of Mr. and Mrs. Robert D. Jennings. No address was mentioned. On appeal it was contended that the information was fatally defective because the address of the dwelling house was not set out. This contention was rejected, the court saying, "The failure to allege the address does not make this information legally insufficient. It was sufficiently definite to enable the defendant in this case to prepare his defense * * * [and to bar] subsequent prosecution for the same offense." 436 S.W.2d l. c. 251 [6].

■■ Appellant's third pro se point on appeal is that the State deliberately suppressed fingerprints found at the scene of the crime, fingerprints which did not belong to appellant or connect him with the crime and which, if brought forth by the prosecutor, would have tended to clear him of the charge. This question is not here for appellate review for the reason that it was not assigned as error in either of the two motions for new trial. Appellant makes the unsubstantiated assertion in his pro se brief that the issue was raised in the trial court by a supplement to the motion for new trial, but a supplemental motion raising this issue does not appear in the transcript. Nor is this a matter for review under the plain error Rule 27.20(c).

■ Attending to the brief filed on behalf of appellant by his court-appointed counsel, the first point is that the evidence is insufficient to sustain the conviction for the reason that appellant produced a number of alibi witnesses who gave "clear and uncontradicted" evidence that appellant was in Kansas City at the time the Rule home was broken into; that the prosecutor made no connection between appellant and the burglars, and the jury could only have based its verdict of guilt on speculation and surmise. This argument assumes the truth of the testimony given by the alibi witnesses, but the jury could believe or disbelieve the alibi testimony. "Appellant's denial of the charge and the proof in support of his defense of *alibi* merely presented an issue of fact for the jury, * * *." State v. English, 11 S.W.2d 1020, 1022 [3] (Mo.1928). It is the function of the jury and not of this Court to resolve differences and inconsistencies between the testimony offered by the prosecution and that of the alibi witnesses offered by the defendant. Zammar v. United States, 217 F.2d 223 (8th Cir. 1954). In determining the sufficiency of the evidence to sustain the verdict the reviewing court does not weigh the State's evidence against the contrary evidence offered by the defendant. State v. Roach, 480 S.W.2d 841 (Mo.1972). The scope of appellate review extends only to a determination of whether there is sufficient substantial evidence to support the verdict. A short summary of the State's evidence follows. While both Mr. and Mrs. Rule were absent from their residence on 128th Street in North Kansas City the home was burglarized. A General Electric television set and several shotguns were stolen from the place. The burglary occurred between 2:55 p. m., when Mrs. Rule left the house, and 6:15 p. m., when the burglary was discovered. At 8:16 p. m. appellant was stopped in Kansas City while operating a motor vehicle in which

the items stolen earlier in the day were found, along with a weapon and the following burglar tools: a pair of pliers (the handle of which "fit perfectly" the marks made in the door of the house that was burglarized), a crowbar, a tire iron, a keyhole saw, a hacksaw, a one-inch drill bit and a drill brace. The foregoing is sufficient substantial evidence to support the verdict of burglary second degree and stealing. "Evidence of burglary and of recent, exclusive and unexplained possession of stolen property is sufficient to submit a burglary and stealing case to the jury and to convict the accused of both offenses, [citing four Missouri cases] * * *." State v. Robb, 439 S.W.2d 510, 513 [3] (Mo.1969).

▇▇ Appellant objects that on voir dire examination the court failed to sustain his challenges of the following veniremen for cause: Ottman (because his brother-in-law was a member of the Kansas City Police Department and three members of that department testified as witnesses in the case); Schmitd (because his next-door neighbor was a member of the Kansas City Police Department); Allison (because she had a T.V. set stolen six years ago and a chain saw and two shotguns stolen recently); McDaniel (because he was chief finance auditor for the Kansas City Post Office Department in charge of agents who investigate burglaries, holdups, embezzlement and other postal system crimes and testify in federal court in government criminal cases).[1]

State v. Cashman, 485 S.W.2d 431 (Mo. 1972) presents a remarkably similar situation. In Cashman two prospective jurors were challenged for cause based upon their relationship to law enforcement officials. The denial of the challenges was held not

error because they stated their connection with the law enforcement officials would not affect their ability to consider the case impartially. In the case now before us venireman Ottman stated that there was nothing in his conversations with his brother-in-law relating to "the police goings on" which might give the police testimony any more or less weight than that of anyone else, and that he felt like he could fairly and impartially view the evidence coming from the police "just as well as [he] could from witnesses for the defendant." Mr. Schmitd said there was nothing in his discussion of criminal cases with his next-door neighbor that would make him give any more weight to the evidence that came from the three police witnesses than the evidence coming from witnesses for the defendant. Mr. McDaniel stated that there was nothing in his experience or dealing with the officers that would cause him to lean one way or the other in hearing this case; nothing that would cause him to lean any more toward the prosecution than toward the defendant. Under these circumstances the court did not err in denying the challenges of veniremen Ottman, Schmitd and McDaniel, following the ruling in Cashman, 485 S. W.2d l. c. 434 [5].

▇▇ Prospective juror Allison was told that the charge to be tried was burglary and larceny, and was asked whether there was anything about her experience that would cause her to be prejudiced one way or the other in this case. She answered in the negative. In Cashman two prospective jurors were challenged for cause on the ground that they had been victims of burglaries several years previously. The overruling of the challenges was held not error because no affirmative response was

---

1. In his brief appellant complains of failure to excuse veniremen Pollock, Folck, Croskey, Greenwood and Ellis, for cause, but appellant failed to make complaint in his motion for new trial concerning the court's action in regard to these named persons and therefore the propriety of the court's failure to strike them for cause is not before us for appellate

review, any complaint with respect thereto having been waived. Parenthetically, however, we note that in fact Mr. Pollock was excused for cause, and that each of the others either stated that he or she could fairly and impartially hear the case or had not formed an opinion in the matter.

made by them upon general inquiry to them and other members of the panel who had been victims of crimes as to whether such experiences would affect their partiality or cause any prejudice. Under the ruling in Cashman on this same question we find the court did not err in this connection. Cashman, 485 S.W.2d 1. c. 433 [4].

Next, error is asserted in admitting in evidence the weapons and other evidence found in the trunk of the automobile for the reason that they were obtained by an illegal search and seizure. At 8:16 p. m. on the day in question Patrolman Leach, accompanied by Patrolman Dickstein, officers of the Kansas City Police Department, saw the automobile driven by appellant at Truman Road and Bales Street, traveling normally. The officers noticed that the license plate was bent or crumpled and was sagging or hanging down on one side. Suspicious, the officers started trailing appellant's automobile, read the license number, reported the number to the dispatcher and received information that the license plate was reported stolen. Appellant's automobile was brought to a stop by spotlight and siren. Patrolman Leach walked up to appellant's automobile. Appellant got out of his car and asked what the problem was. The officer advised him that the license plate on his vehicle was reported stolen and asked to see his driver's license. Appellant replied that he had no driver's license in his possession. The officer told him he was under arrest for driving a vehicle with stolen plates on it and for not having a driver's license in his possession. Leach asked Dickstein to request the passenger in appellant's car (one Smith) to step out to see whether he had a driver's license. If the passenger had a license the officer intended to release the car to him while Leach took appellant to the station to be booked on the traffic charge. Smith had no driver's license. After Smith left the passenger side of the vehicle Leach observed a weapon—a revolver—lying on the floorboard, part of which was in plain view. When Dickstein removed the revolver from the floorboard both officers observed the name "Bill Rule" on the weapon. It was loaded. At that time Leach arrested both of the men and "read to them their Miranda rights." Then Leach, without permission from appellant, removed the keys from the ignition and gave them to Dickstein. The officers intended to have the vehicle towed to the lot set aside for that purpose. It is a policy of the police department to check the vehicle to be towed, in all areas including the trunk, for valuables which have to be removed and placed in the property room to prevent loss or theft while the car is in the tow lot. When Leach handed the keys to Dickstein the latter opened the trunk "as per procedure." Inside the trunk the officers found thirteen assorted rifles and shotguns, a portable television set, and the burglar tools above described. Leach radioed the dispatcher and reported the find, to see if headquarters had any knowledge of a burglary. The city tow truck was called, and appellant and Smith were taken to the police station in a paddy wagon.

Reception in evidence of the revolver found on the floor was proper. Its discovery and recovery did not involve a "search," since it was in plain view; no search was necessary to discover it. There was no prying into hidden places for intentionally secreted objects. Instead, a part of the revolver fell within the view of the officer when the door of the automobile was opened and the passenger alighted from the vehicle. This is exactly the same situation encountered in State v. Rankin, 477 S.W.2d 72, 75 [4, ·5] (Mo.1972), in which the pistol recovered in that case was held admissible in evidence under the "plain view" doctrine.

The stolen property and the burglar tools were also properly admitted in evidence. They were not the fruit of an unlawful search and seizure. It was not necessary for the officers to first obtain a search warrant or obtain permission from the operator of the automobile to open the

trunk. The officers had a right to stop the automobile in the first place because there was reasonable ground to suspect that the operator was committing the crime of driving an automobile bearing a stolen license plate. § 84.710, subd. 2, RSMo 1969, V.A.M.S. Having information from the dispatcher that the license plate was reported stolen the officers were performing a legitimate investigative function when they stopped the automobile to check the identity of the operator and his right to use the plate. Upon inquiry it turned out that appellant did not have a driver's license in his possession. Operation of a motor vehicle upon any highway in this state without a valid license is unlawful and constitutes a misdemeanor. §§ 302.-020(1) and 302.340, RSMo 1969, V.A.M.S. Failure of the operator of a motor vehicle to exhibit his license to any police officer when demand is made is presumptive evidence that such person is not a duly licensed operator. § 302.181, RSMo 1969, V.A.M.S. In these circumstances, it reasonably appearing to the officers that appellant was operating a motor vehicle bearing a stolen license plate, and that he was not able to display a driver's license upon demand, Patrolman Leach had probable cause to arrest appellant. United States v. Rodgers, 246 F.Supp. 405 (E.D.Mo.1965), aff. 8 Cir., 362 F.2d 358, cert. den. 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454. Appellant having committed at least one misdemeanor, and presumptively two misdemeanors, in the presence of the officers, the arrest of appellant without a warrant was lawful. It was in the course of this arrest that one of the officers saw the revolver lying exposed on the floor of the automobile and, upon recovering it, ascertained that it bore the name of a person other than appellant or Smith, and that it was loaded. These circumstances gave the officers reasonable grounds to suspect that other criminal activity was occurring and that the automobile might be carrying contraband. . These circumstances imposed upon the officers a duty to the public to further investigate, State v. Cohn, 347 S.

W.2d 691, 695 (Mo.1961), to determine whether another offense had been committed. "A reasonable belief or probable cause for believing that a felony has been committed and that an automobile contains that which by law is subject to seizure, will justify a search of an automobile and seizure incident to a lawful arrest, without a search warrant." State v. Camper, 353 S.W.2d 676, 680 [7, 8] (Mo.1962). The suspicious license plate observed on the moving vehicle, the information received from the dispatcher, the lawful arrest, the discovery of the revolver apparently belonging to another, and the investigation which revealed the theft "constituted one continuous flow of events which led without interruption to the search of the automobile. The search of the automobile and seizure of the fruits of the crime without a warrant were not unreasonable under these circumstances, but were based upon probable cause, as an incident to a lawful arrest." State v. Camper, supra, 353 S.W.2d l. c. 680. Additional authority for this holding is found in State v. McCarthy, 452 S.W.2d 211 (Mo.1970).

■ The fact that the officers sought to justify the opening of the trunk by relying upon a department practice to remove from an automobile about to be towed all articles of value and to inventory and preserve them in order to prevent loss to the owner, does not negative their right and duty to make this investigative search of the trunk on the basis above mentioned. On inventory examinations generally see United States v. Lawson, 487 F.2d 468 (8th Cir. 1973).

For the reasons given the stolen property and burglar tools were properly admitted in evidence notwithstanding no search warrant was obtained and despite the lack of permission from appellant.

■ Appellant objects to the failure to quash the information because the preliminary hearing was set on the magistrate court's own motion more than forty days after arraignment, contending that appel-

lant was thereby not afforded his constitutional right to a speedy trial. In addition to the federal and state constitutional provisions guaranteeing the right to a speedy trial appellant counts on Rule 23.06, which provides: "If it be impractical to conduct an immediate preliminary examination, the examination may be postponed to a later date and an examination of the accused may be adjourned from time to time as the occasion requires, not to exceed ten days at one time, and said adjournment shall be allowed either to the prosecution or to the accused for the purpose of procuring the attendance of material witnesses, and for any other good and sufficient cause. * * *" The delay in question, while illegal, was an irregularity only and did not deprive the magistrate or circuit court of jurisdiction. Such delay "will not invalidate the conviction ultimately obtained, in the absence of prejudice" resulting from the delay. State v. Caffey, 438 S.W.2d 167, 171, 173 (Mo.1969), cert. den. 396 U.S. 853, 90 S.Ct. 114, 24 L.Ed.2d 102. Appellant has failed to demonstrate wherein he was prejudiced by the delay.

■ Appellant complains that as an indigent he made a written request for, but was not furnished with, a transcript of the preliminary hearing. Section 544.370, RSMo 1969, V.A.M.S., provides that "In all cases of homicide, but in no other, the evidence given by the several witnesses (at a preliminary examination) shall be reduced to writing by the magistrate, or under his direction, and shall be signed by the witnesses respectively." (Our parentheses.) Section 544.390 provides that such examinations shall be certified by the magistrate, and that where the prisoner is committed to jail, the examination shall accompany the warrant of commitment, and be delivered therewith to the jailer. Section 544.-390 is not jurisdictional, State v. Hughey, 404 S.W.2d 725 (Mo.1966). These sections apply only to homicide cases and have no application in this burglary and stealing case. There are no other statutes requiring compliance with appellant's request.

There is no constitutional requirement that there be a transcript of the testimony at a preliminary hearing. State v. Maxwell, 400 S.W.2d 156, 159 (Mo.1966).

■ Appellant objects to the amendment of the information to conform to the evidence, allowed by the court at the close of the State's case, whereby the words "a building located at 128th Street and N.W. Skyview" were amended to read "a building at 128th Street near N.W. Skyview." At the trial defendant claimed surprise and on appeal claims prejudice, arguing that the prosecutor should not be able to trick and deceive the defendant into basing his defense upon the fact that the offense did not occur at the place where the information charged and then after putting on all his evidence be permitted to amend the information to conform to the facts he proved (allegedly a building some quarter of a mile away from the intersection). Rule 24.02 provides that the court may permit an information to be amended at any time before verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." There was no confusion in the minds of appellant and his counsel about the exact location of the house burglarized. Its location was made clear at the preliminary hearing. Appellant's counsel closely cross-examined Mr. and Mrs. Rule at the outset of the State's case with reference to the proximity of the house to Skyview Drive, and demonstrated complete familiarity with the locus in quo. No additional or different offense was charged. Before and after the amendment the offense charged was burglary and stealing from a building on 128th Street, the property of Billy D. Rule. No substantial rights of the defendant were prejudiced. State v. Aston, 412 S.W.2d 175, 182 [10–12] (Mo.1967), is precisely in point. The slight amendment made no difference whatever in the defense, which was alibi. It would be a matter of indifference to the accused whether the burglary occurred at one address or another, if at the time the

burglary took place he was elsewhere. If innocent of any burglary he would be innocent of all burglaries, wherever they may have occurred.

■ Next, appellant makes the point that the court erred in not allowing his court-appointed attorney to withdraw after he was discharged by appellant. Appellant claims that he was dissatisfied with his attorney and that an indigent defendant should not be forced to continue to trial with such an attorney merely because he is indigent and unable to hire counsel of his own choice. This is a matter within the discretion of the trial court. State v. Lahmann, 460 S.W.2d 559 (Mo.1970); State v. Hamblin, 448 S.W.2d 603 (Mo.1970). Nothing of record indicates that the court-appointed attorney was derelict in his duties or that he did or omitted to do anything to warrant his dismissal or entitle the accused to the appointment of new counsel. On the contrary, as in Evans v. State, 467 S.W.2d 920 (Mo.1971), it appears that he discharged his duties diligently and with professional competence. The fact that for some insubstantial reason the defendant became dissatisfied with counsel is no sufficient basis upon which to entitle him arbitrarily to discharge his attorney without reason or justification and to be entitled to a change of counsel. Evans, supra. That defendant was unduly "picky" in this connection is attested by the fact, commented on by the trial judge in denying the request, that defendant had dismissed two previously appointed counsel. The trial court did not abuse its discretion in denying appellant's request.

■ Appellant complains of the admission of nonexpert evidence that the pry marks on the door matched the pliers found in his possession. Charles Templeton, a patrolman employed by the Kansas City Police Department for more than four years, testified that he observed a comparison of the end of the pair of pliers found in appellant's automobile with the ⅜ inch indentation in the aluminum facing of the door on the Rule house, and that it fit perfectly. Appellant argues that opinion testimony is not admissible unless it is confined to matters requiring special skill or knowledge and is not within the knowledge or understanding of mankind generally; that this required special skill or knowledge; that there was no showing that the officer was an expert qualified to testify in this case, and therefore there was no basis for the admission of his opinion testimony. In Beuttenmuller v. Vess Bottling Co. of St. Louis, 447 S.W.2d 519, 526 [5] (Mo.1969), this Court said: "The opinion of a lay witness is inadmissible unless the fact in issue is 'open to the senses.' Aetna Life Ins. Co. of Hartford, Conn. v. Kelley, C.A.8, 70 F.2d 589, 93 A.L.R. 471." What Patrolman Templeton testified to was not a matter requiring special skill, knowledge or expertise not within the understanding of mankind generally. He testified to a fact issue open to the sense of sight and did not purport to do so in the role of an expert witness. Whether a tool and an indentation fit each other is not a matter requiring training, expertise or specialized knowledge. Anyone looking at the tool and the indentation could testify whether the two fit each other. There was no error in admitting this testimony.

■ Exception is taken to the refusal of the trial court to declare a mistrial when it was reported to the court just before the jury retired to deliberate that at the noon recess (after the jury had been selected but before they were sworn in) a juror (later elected foreman) had been seen in the hallway of the courthouse talking to the complaining witness, Billy Rule, who was "being awfully friendly" with the juror. Rule 27.19(a)(2) provides that a new trial may be granted when the jury has been guilty of any misconduct tending to prevent a fair and due consideration of the case. The witness who observed them talking believed, but could not swear, that the name "Bob" came up in the conversation; "they were talking about some Bob," but nothing further was reported about the

substance of their conversation. The conversation, according to an affidavit filed in support of the motion for new trial, lasted about two minutes. The matter was argued when the motion for new trial was heard, considered by the court, and overruled. There has been no showing that anything relating to the case on trial was discussed during the conversation or that any prejudice to appellant's rights resulted, and therefore what Dalton, J. wrote in State v. Miles, 364 S.W.2d 532, 536 [6] (Mo.1963), is apropos: "While the conduct of a prosecuting witness in even innocently visiting with the jurors is to be avoided, nevertheless, the court had broad discretion in determining whether a mistrial should be declared and, under the facts shown, the court did not abuse its discretion in overruling the motion * * * [citing cases]."

■ Appellant argues that a mistrial should have been declared when in *closing* argument the prosecutor said, "So, gentlemen of the jury, ma'am we respectfully ask you today to find this defendant guilty, to assess his punishment—

"Mr. Lay: I'm going to object to any argument as to punishment at this time since there was no statement as to punishment in the opening statement here on behalf of the prosecutor.

"The Court: Overruled.

"Mr. Lay: And I ask for a mistrial.

"The Court: Denied. Proceed."

The prosecutor then proceeded to urge that the punishment be strict and severe; that the defendant should be punished for burglary and for the fact that what he stole were guns.

There was no error in the ruling. The foregoing did not occur during the State's *closing* argument. It occurred in the State's *opening* argument—in the State's *first* summation to the jury. Concededly, the State has the right to argue the matter of punishment in the first portion of the argument to the jury. Defense counsel's argument to the jury followed the above colloquy and therefore defense counsel had an opportunity to answer the argument respecting punishment. The only case cited by appellant is State v. Peterson, 423 S.W. 2d 825 (Mo.1968), in which a conviction was reversed because the prosecutor argued the matter of punishment in his *final* summation to the jury. In that case the prosecutor did not discuss or refer to punishment in his opening argument. The opinion specifically states that the Court is not holding or implying "that counsel for the State may not elaborate upon the issue of punishment in his concluding argument, *if* he has made a fair statement of his position in the opening." 423 S.W.2d 1. c. 830 [1]. In any event appellant could not have been prejudiced because the jury could not agree on the punishment, which was fixed by the judge.

■ Appellant's last point is that the court erred in not sustaining objections to the prosecutor's argument "which in effect called upon the jury to place themselves in the position of the prosecuting witness." In stating to the jury his "guidelines" for determining punishment the prosecutor said that the defendant "should be punished because this is how guns get into the hands of people who point them at other people and pull the trigger and kill other people. They come from somebody's house who owns them legally. They are stolen—." An objection on the ground that this argument was not supported by evidence was sustained. A request for a mistrial was denied, but the court on its own motion instructed the jury to disregard the remarks of the prosecutor "about pointing at people and shooting at people."

Obviously the argument did not, directly or indirectly, "call upon the jury to place themselves in the position of the prosecuting witness," Billy D. Rule. In making this point appellant apparently is attempting to invoke the rule that it is improper for the prosecutor to "personalize" the members of the jury and engender feelings

of fear on their part for their own personal safety. The argument to which exception is taken, while improper, was general, applied to all persons, was not directed at the jurors personally, and did not offend against the rule sought to be invoked. The court sustained an objection to the argument and, without having been requested to do so, ordered the jury to disregard the improper remarks. This action served to correct the impropriety. We cannot say that the court abused its discretion in not going further and aborting the entire trial. See State v. Raspberry, 452 S.W.2d 169 (Mo.1970).

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM: The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.