STATE of Missouri, Respondent,

v.

Harrison GIBSON and Frank Wayne Maupin, Appellants.

No. 9992.

Missouri Court of Appeals, Springfield District.

Sept. 8, 1976.

Motion for Rehearing Denied Oct. 6, 1976.

Application to Transfer Denied Dec. 13, 1976.

---

Scott B. Tinsley, Springfield, for appellants.

John C. Danforth, Atty. Gen., Charles L. Howard, Asst. Atty. Gen., Jefferson City, for respondent.

Before HOGAN, P. J., FLANIGAN, J., and CAMPBELL and PYLE, Special Judges.

FLANIGAN, Judge.

Appellants, Harrison Gibson and Frank Wayne Maupin, each tried under the Second Offender Act (556.280 V.A.M.S.), were convicted by a jury of the crime of attempting (556.150 V.A.M.S.) to commit the offense of burglary in the second degree (560.070 V.A.M.S.). Each received a sentence of five years imprisonment.

The sole contention of each appellant is that there was a fatal variance between the offense charged in the information and the offense shown by the evidence. The contention is sound and the cause must be reversed and remanded.

The amended information against appellant Maupin, on which the cause was tried, in addition to pleading formal matters and the prior conviction, alleged that he "on or about the 18th day of January, 1975, in the County of Greene and State of Missouri, did then and there willfully, unlawfully and feloniously attempt to break and enter into

a building used and occupied by the Brown Derby Wine Center, 1909 S. Campbell, Springfield, Missouri, by removing a portion of the roof with intent to steal, the same being a building in which divers goods and other valuable things were then and there kept and deposited. . . ." The amended information against appellant Gibson also contained the quoted language.

Appellants, in their brief, point out that, according to the amended informations, the target of the attempted burglary was "a building used and occupied by the Brown Derby Wine Center, 1909 S. Campbell, Springfield, Missouri." Appellants then say: "The evidence adduced at the trial, however, clearly established that there was an attempt to break and enter an adjacent and separate business, the Medicare Pharmacy. Thus there was a fatal variance between the pleading and the evidence."

Located in what one witness labeled "the shopping center building complex" were six separate stores. The Brown Derby Wine Center (the wine center) is at the east end of the "complex." Immediately west of the wine center is the Medicare Pharmacy (the pharmacy). Appellants' statement of the facts, adopted by the state, says: "A store room is located in back of the wine center and does not have a false ceiling. That part of the pharmacy adjacent to the wine center store room does have a false ceiling. The result is that one standing in the wine center store room can see up and over into a space above the pharmacy's false ceiling."

At 7:30 p. m. on January 18, 1975, the wine center was open for business and the pharmacy was closed. Two employees of the wine center, Weinberg and Burkart, heard scraping noises. Weinberg went to the front of the pharmacy "to see if it was open, to see if someone was working." The pharmacy was closed, "its door was locked and its lights were out." He returned to the wine center and he and Burkart again "listened to the hammering and scraping noises." Weinberg called the police and several officers arrived within three or four minutes.

Weinberg said that when he heard the noises "I thought it was someone in the pharmacy. They were coming from the vicinity of the pharmacy." Burkart said that the noises "came from the top of the pharmacy."

One of the officers saw appellants jump off a loading dock at the rear of Milgram's. Milgram's is one of the six businesses in the complex and is the second store west of the pharmacy. Appellants attempted to flee but were caught by the officers and taken into custody at the scene. No weapons were found on either appellant or in the area.

On appellant Gibson was found a pair of brown gloves containing particles of tar. Another pair of gloves was found within three feet of the place where Maupin was arrested. These gloves also contained tar particles. No other persons were in the vicinity except the police officers, Burkart and Weinberg.

On that portion of the roof of the building which was over the pharmacy a police officer found several hand tools and an "x mark" in the roof itself. The x mark was in the "outer layer of the roof" and particles of tar and rock had been removed from the x mark. The police officer, referring to the x mark, said "This is where the entry was attempted." He also said "If you followed the x straight through the roof you would end up being on the property of the pharmacy."

At the close of the state's evidence each appellant unsuccessfully moved for a judgment of acquittal. One of the grounds for the motion was that there was no evidence that defendants had attempted to break into the wine center—"The marks on top of the building were directly over the pharmacy, the wrong place was charged in the information." Thus each appellant preserved the question of variance for appel-

late review.[1] The state made no request to amend either information.[2]

Neither appellant testified and no evidence was offered on their behalf.

The verdict-directing instruction against each appellant required the jury to find, among other things, that he "attempted but failed to break into a building located at 1909 S. Campbell, Greene County, Springfield, Missouri, occupied by the Brown Derby Wine Center by removing a portion of the roof thereof."

■ A pertinent part of Rule 24.01 reads: "[T]he information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . ." Here the offense charged was attempting to commit the offense of burglary in the second degree. The four elements of an attempt to commit a crime are "intent to commit a crime, an overt act toward its commission, failure of consummation and apparent possibility of commission . . . ." *State v. Miller*, 368 S.W.2d 353, 359[9] (Mo.1963).

■ The crime attempted was burglary. Under Missouri law an information for burglary must "set out the ownership of the burglarized premises," *State v. Rist*, 456 S.W.2d 13, 15[1] (Mo.1970), although this requirement is satisfied by an allegation of occupancy or possession. It is not necessary to allege the legal status of the owner or occupant, that is, whether it is a corporation, partnership or individual. *State v. Ford*, 403 S.W.2d 611, 612[1] (Mo.1966).

■ There are two reasons for the requirement that the identity of the owner or occupant of the place burglarized be contained in the information: "(1) [To show] that the house alleged to have been burglarized was not the dwelling of defendant; and, (2) [to identify] the offense [so] as to protect the [defendant] from a second pros-

ecution [from] the same offense." *State v. Rist*, supra, at p. 15.

*State v. Ford*, supra, contains an instructive list of burglary informations, some held to be sufficient and others insufficient.

■ Here the state, by its informations and by its verdict-directing instructions, pinpointed the wine center as the target of the attempted burglary. Neither information and neither instruction mentioned the pharmacy.

"The defendant [is] entitled to know the nature and cause of the accusation against him and the State must prove the crime charged. It cannot charge him with one crime and sustain a conviction by proving another." *State v. Temple*, 262 S.W.2d 304, 305[3] (Mo.App.1953), quoted with approval in *State v. Billingsley*, 465 S.W.2d 569, 570 (Mo.1971). "When the information specifically describes the premises on which the violation was alleged to have taken place, the State is bound by that description." *State v. Temple*, supra, at p. 305.

Where the information described a certain location as the place of the offense and the proof showed the offense to have been committed in a different place, the variance was held fatal in *State v. Malloch*, 269 Mo. 235, 190 S.W. 266 (1916) and in *State v. Temple*, 262 S.W.2d 304 (Mo.App.1953). This is true where, as here, the place of the attempted burglary is one of the "essential facts constituting the offense charged." Rule 24.01.[3]

The state, conceding that the point of attempted entry was "in the portion of the roof over the pharmacy," seeks to avoid the impact of the foregoing authorities by saying: "It was so close to the [wine center] that the jury could have inferred from its location that appellants were intending to burglarize the [wine center]." The state

1. *State v. Yearwood*, 510 S.W.2d 43, 44[1] (Mo. App.1974).

2. See *State v. Eaton*, 504 S.W.2d 12, 20[16] (Mo.1973), and compare *State v. Wright*, 339 Mo. 41, 95 S.W.2d 1159 (1936).

3. "[T]he identity of the place burglarized is an essential element of the crime, and where the place is designated in the indictment or information, not as a matter of venue, but as a matter of local description, a variance between the description in the pleading and the evidence on the trial is fatal." 13 Am.Jur.2d Burglary § 43, p. 348.

also says: "There was undisputed evidence of an attempt to burglarize and indefinite evidence concerning the object of the intent—the pharmacy, the wine center, or both." In support of these statements the state emphasizes that had entry been gained at the x mark, the interior construction of the pharmacy was such that a person entering the top portion of the pharmacy could have entered the store room at the rear of the wine center. The state relies upon evidence showing that the part of the pharmacy adjacent to the wine center store room had a false ceiling and there was no wall or other obstruction between it and the upper portion of the wine center store room.

The fallacy in the state's position is that there was no evidence that either appellant had any knowledge that the interior of the pharmacy was so constructed that from the portion of it above the false ceiling there was direct access to the wine center store room. Indeed it may be that the fact that appellants were not armed made it unlikely that they intended to enter the wine center, it then being open for business with at least two employees on duty. The pharmacy, being closed, was perhaps a more likely goal for unarmed burglars.

█ This court concludes that the variance between the two informations and the proof is fatal to the two convictions. But it does not follow that appellants are entitled to an absolute discharge. Appellants have conceded that the evidence shows an attempt to break and enter the pharmacy. The cause should be remanded to give the state an opportunity to seek leave to file amended informations or take such other action as the state deems advisable. *State v. Cunningham*, 380 S.W.2d 401, 403[10] (Mo.1964); *State v. Lee*, 488 S.W.2d 272, 274 (Mo.App.1972) and authorities there cited.

For the reasons stated the judgments of the trial court are reversed, and the cause is remanded.

All concur except CAMPBELL, Special Judge, who dissents in separate opinion filed.

CAMPBELL, Special Judge.

I respectfully dissent. The liquor store manager testified "we went back and listened to the hammering and scraping noises, which were in the proximity of our back room." Police Officer Dove testified that the x mark was just in front of a vent on the roof. His reply to the question "do you know where this vent enters, what building?", was, "Basically, it's the Brown Derby building. You can see from the Brown Derby area the vent where it comes through the roof and it goes through to the back of the pharmacy." He further testified that "if there was a hole cut there it would allow you entrance into the Brown Derby."

Had defendants gained entry to the building at the x mark, they would have been in an area with direct access to the goods, wares and merchandise of the liquor store. Defendants could only have gained access to the pharmacy by another breaking and entering of the false ceiling of the pharmacy. There is no evidence indicating that defendants were attempting to obtain access to the pharmacy and we cannot so speculate. I find no variance between the information and the evidence presented at trial. The facts support the convictions for attempted burglary of the liquor store, and I would affirm.