**Denise E. HANNA. Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SD 31998.

Missouri Court of Appeals,
Southern District,
Division One.

May 13, 2013.

Mark A. Grothoff, of Columbia, MO, for appellant.

Chris Koster, Attorney General and Robert J. Bartholomew, Jr., Assistant Attorney General, of Jefferson City, MO, for respondent.

**WILLIAM W. FRANCIS, JR., J.**

Denise E. Hanna ("Denise")[1] appeals the motion court's denial of her Rule 29.15[2] motion following an evidentiary hearing on the basis the motion court clearly erred in denying her claim of ineffective assistance of trial counsel. We affirm the judgment of the motion court.

### Facts and Procedural Background

Given the narrow scope of Denise's appeal, we set forth only those facts necessary to complete our review. The record reveals that Ralph Hanna ("Ralph") and Denise were married for twenty-eight years and had two sons, Phillip and Shawn. In November 2003, they were all living in rural Ellsinore, Missouri, with the exception of Phillip who lived in Trinidad, Colorado. Phillip managed, and was part owner of, a motel restaurant in Trinidad in which Ralph had a financial interest.

In the years leading up to November 2003, Denise was aware that Phillip's restaurant had been in a financial slump and she had sent Phillip over $30,000. Denise obtained the money through the use of credit cards and did not want Ralph to find out about the money she had sent Phillip. Denise also purchased a Jeep for Phillip in October 2003, and hid that purchase from Ralph as well.

Ralph owned and operated Hanna's Garage in Poplar Bluff. In early November 2003, Denise told Joy Michelle Gilliam

---

1. Because a portion of the involved parties share the same surname, for ease of reference we refer to the parties by their first names. We mean no familiarity or disrespect.

2. Unless otherwise specified, all rule references are to Missouri Court Rules (2013).

("Gilliam"), an employee who helped in the business office at the garage, that she had been taking cash from her credit cards and sending it to her "kids" and that Gilliam needed to help her hide the credit card bills so that Ralph would not find out. Denise told Gilliam that the credit card debt was approximately $100,000.

Prior to November 16, Denise also told Gilliam that Phillip was coming from Colorado and that they were going to sit down and tell Ralph about the money and if Phillip did not come, she was just going to leave. Later, Denise told Gilliam she had told Ralph about the money, without Phillip being present, and Ralph had gotten mad and had indicated that in order to fix it, Denise would have to get a job, Phillip would have to get a job, and Ralph and Denise would have to refinance their home. Denise told Gilliam that she would not live with Ralph under those conditions because Ralph would be watching her every move and she was just going to move out.

Several weeks prior to November 16, 2003, Denise visited Shawn at Three Rivers Inn, where Shawn was staying with Jason Hays ("Hays), and told him, in front of Hays, that she needed to kill Ralph, or have someone do it for her, because of the money she had given to Phillip. Denise knew Shawn was in possession of several firearms.

On the morning of November 16, 2003, Ralph was shot and killed in his backyard with a high-powered rifle. The shooting first appeared to be a hunting accident as it was the first day of deer season and the rear of the Hannas' property was heavily wooded. However, after an investigation, Denise was charged with the class A felo-ny of murder in the first degree, in violation of section 565.020.1,[3] for consorting with another to kill Ralph by shooting him; and armed criminal action, in violation of section 571.015.1. Shawn was also charged as a rifle that was on the list of guns that might have fired the round that killed Ralph was later found in his possession. Denise knew Ralph had at least two life insurance policies of $25,000 and $50,000. Also found during the investigation, was a handwritten note by Ralph, which was a checklist of things to do including calling credit card companies, check regarding mortgaging the house, "Phil has to find job," "[Denise] has to find job," check with "dad for Phil to live in trailer," "Michelle in charge of garage office," and "everything goes in Ralph's name."

A jury trial was held on September 19, 2007. Denise did not testify or present any evidence. After hearing all of the evidence, the jury returned verdicts of guilty of murder in the second degree and armed criminal action. Denise waived jury sentencing after the verdict and the court sentenced Denise to life imprisonment on the murder charge, and a consecutive sentence of ten years' imprisonment for armed criminal action.

Denise appealed her conviction and this Court affirmed her conviction and sentence on December 21, 2009, in an unpublished order and memorandum.

On February 2, 2010, Denise filed a *pro se* motion for post-conviction relief detailing twenty separate allegations of ineffective assistance of counsel.[4] On October 14, 2010, Denise's post-conviction counsel filed a "Statement in Lieu of Filing an Amend-

---

3. All references to statutes are to RSMo 2000, unless otherwise indicated.

4. Out of the twenty, the only issue here is Denise's allegation that "The jury during breaks were [sic] talking to people while outside the court house [sic]."

ed Motion" which requested that the motion court rule on the issues raised in Denise's *pro se* motion. An evidentiary hearing was held on October 20, 2011.[5] The motion court took judicial notice of the underlying criminal file, including the record on appeal, at Denise's request.

At the evidentiary hearing, Denise's trial counsel, Steven Lynxwiler ("Lynxwiler"), testified. Lynxwiler was asked whether the rule was "invoked on witnesses." Lynxwiler testified he believed the rule had been invoked and that it was his standard practice to do so in every case. He testified it is usually invoked prior to opening statements and the court "instructs the parties to have their witnesses removed from the courtroom." He also testified that it was his understanding the rule prohibited witnesses from discussing the content or nature of their testimony during trial. He did not recall this having been an issue in Denise's case, but stated law enforcement "were probably talking to each other about the case, as they usually tend to do."

Lynxwiler testified he did recall that Denise was concerned about "some jurors speaking with some people" and it was brought to the trial court's attention, but he did not believe "there was ever a basis found for any sort of . . . juror misconduct." He believed he made a record and took it up with the judge. Lynxwiler testified it had been brought to their attention that some of the jurors may have been "either outside, or out in the hallway, speaking with some different people." Lynxwiler recalled the judge did speak with the bailiff and the bailiff had indicated that "while they may have spoken with other people, it wasn't anything about the case[,]" and it was nothing more than

" 'hey, how are the kids.' " Lynxwiler testified that if it had been any more than just "pleasantries" he would have asked for a mistrial.

On cross-examination, Lynxwiler testified that during breaks, the jury is "pretty well free to do what they like, with general instruction . . . not to discuss the case[.]" He testified it was just the "nature of a small county" that "everybody knows everybody," "everybody wants to . . . talk," and that makes it "hard to try cases in a small county." Lynxwiler did not "see anything wrong with . . . saying . . . how are your cows doing[,] [h]ow are the kids doing[,] [or h]ow is your wife doing?" He did not know if it was jurors actually talking to witnesses, but when it came to their attention, he did raise the issue with the court. He testified that when the jury went out to deliberate, they were never separated and were kept together in the jury room. He stated the jury would not have been allowed to wander the building without supervision.

Heather Hanna ("Heather"), Shawn's wife and Denise's daughter-in-law, testified on Denise's behalf. She testified that during jury deliberation, she and Shawn were sitting outside the courthouse at a picnic table and observed deputies who had testified at trial, and the bailiff, talking with some of the jurors in a pavilion. The jurors were taking a break from deliberations and had not yet rendered a verdict. Heather testified the jurors were too far away to hear the conversation, but she and Shawn saw them all talking together. In addition, Heather also testified that Shawn told Lynxwiler what they had observed and Lynxwiler said he would bring the matter up with the judge.

---

5. Denise's sole point relied on is directed toward the failure of her trial counsel to pursue a motion for mistrial on the basis of juror misconduct. We address only the testimony which directly pertains to that point.

On cross-examination, Heather testified that there were two bailiffs present outside with the jurors, one of which was standing next to the jurors. She also testified she could not recall the names of any of the police officers she and Shawn had observed speaking with the jurors, she could not distinguish "exactly who they were," neither of them were in uniform, but she did know they were officers who had testified. Nonetheless, she testified that she "was too far away to hear the conversation or know anything about what they were talking about." Heather and Shawn were the only people she knew who observed this communication.

Denise testified on her own behalf. She testified she received information from Shawn and Heather regarding the alleged juror misconduct. She personally never observed this misconduct. She testified she "observed" the information being given to Lynxwiler, and he said "he would try to resolve that."

Denise was granted leave to hold the record open to allow the submission of Shawn's deposition testimony. Shawn's deposition was taken on November 9, 2011. Shawn testified that during jury deliberations, he observed four male jurors outside on a break walk up to three or four highway patrol officers "all in uniform" [6] and talk. He did not hear what was said because he was across the yard. He also testified there were no bailiffs outside with the jurors at the time. Shawn and Heather were the only ones that saw this interaction and were the only ones sitting outside.

On March 19, 2012, the motion court issued its "Findings of Fact and Conclu-

sions of Law and Judgment" overruling Denise's Rule 29.15 motion. The motion court found that the testimony of Denise and Heather, as well as the deposition testimony of Shawn, were not credible. Additionally, the motion court concluded that Heather's testimony was inconsistent and conflicted with Shawn's testimony as to whether bailiffs were present or whether the officers were in uniform. In addition, Heather could not state what was allegedly said, identify the officers, or describe what the officers looked like. The motion court did not "believe that the jurors were allowed to interact with any outsiders during deliberations." This appeal followed.

In Denise's sole point on appeal, she alleges the motion court erred in denying her Rule 29.15 motion because she was denied effective assistance of counsel in that her counsel failed to pursue a motion for mistrial on the basis that jurors spoke with police officers, some of who had testified at her trial, during a break in deliberations. The State argues Denise failed to prove any juror misconduct occurred, or that had Denise's counsel moved for a mistrial alleging such misconduct, a mistrial would have been granted.

The sole issue for determination is whether the trial court clearly erred in finding trial counsel was not ineffective for failing to pursue a mistrial.

**Standard of Review**

 We review a motion for post-conviction relief for whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009)

---

6. On redirect, Shawn testified that the highway patrolmen "had their suits, the uniforms. I know Army uniforms. Stripes and everything were all the same, wear their hats. They're higher rank.... A white, white, white shirt, dark black slacks. The hat that D.O.T. Captains and stuff would wear." On re-cross examination, Shawn described the hats they were wearing as "Smoky Bear hats."

(citing Rule 29.15(k)). Findings and conclusions are clearly erroneous if, after a review of the entire record, "the court is left with the definite and firm impression that a mistake has been made." *Goodwin v. State*, 191 S.W.3d 20, 26 (Mo. banc 2006) (internal quotations and citations omitted). A post-conviction relief ruling is presumed correct and Denise had the burden of proving her grounds for relief by a preponderance of the evidence. *Forrest*, 290 S.W.3d at 708; Rule 29.15(i). "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State*, 301 S.W.3d 112, 117 (Mo.App. E.D. 2010).

### Analysis

 Counsel is presumed effective and the burden is on movant to overcome that presumption. *Forrest*, 290 S.W.3d at 708. To prove ineffective assistance of counsel, a movant "must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney," and that as a result, the defendant was prejudiced in that but for counsel's errors, the outcome of the proceeding would have been different. *State v. Storey*, 901 S.W.2d 886, 893 (Mo. banc 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

 To establish ineffective assistance of counsel for failing to pursue a mistrial due to juror misconduct, Denise must first show that juror *misconduct occurred*. *See State v. Hicks*, 959 S.W.2d 119, 122 (Mo.App. S.D.1997) (holding "juror misconduct must first be established

by the defendant."). Denise has failed to show first that any sort of communication *occurred*. We acknowledge that "innocent visiting between a witness and a juror should be avoided[.]" *State v. Friend*, 607 S.W.2d 902, 904 (Mo.App. S.D.1980). However, it appears in this case that the motion court did not believe even "innocent visiting" ever took place. In its findings and conclusions, the motion court held the "Court does not believe that the jury was allowed to roam outside the courthouse unattended, or allowed to speak to any witnesses during deliberations[,] ... [or] that the jurors were allowed to interact with any outsiders during deliberations." This finding by the motion court is presumed correct. *Forrest*, 290 S.W.3d at 708.

After a review of the entire record, we are not left with the definite and firm impression that a mistake has been made. The only individuals that testified they observed communication between jurors and police officers were Heather and Shawn.[7] However, the motion court found their testimony was not credible due to the following inconsistencies: Shawn testified there were no bailiffs outside during the conversations, while Heather testified there were two bailiffs outside; and Heather testified the officers were not wearing uniforms while Shawn testified they were wearing a uniform of a white shirt, dark pants and the "Smoky Bear" hat. In addition, Heather could not identify the officers, nor could she describe what either of the officers looked like. More importantly, both testified they did not hear the alleged conversations or know anything about what the jurors and officers were talking about.

 Witness credibility is a matter for the motion court to resolve and we

---

7. While Lynxwiler testified he did recall that Denise was concerned about "some jurors speaking with some people," he did not testify that he observed any such communication or that the allegations were that the jurors spoke with witnesses.

defer to its determinations. *See Hurst,* 301 S.W.3d at 117. The motion court is not required to believe the testimony of a movant or any witness and we must defer to the motion court's determination on credibility. *Childress v. State,* 778 S.W.2d 3, 5 (Mo.App. E.D.1989). We find no error in the motion court's finding that jurors were not allowed to interact with outsiders during deliberations and in essence, finding Denise did not prove that communication between jurors and others on break took place.

Even if the communication did take place, Denise has failed to show juror misconduct. The reasoning in *State v. Eaton,* 504 S.W.2d 12, 21–22 (Mo.1973), applies here. In *Eaton,* a juror was seen in the courthouse hallway talking to a witness. The witness who observed them talking stated they were talking about "some Bob," but could not report anything else about the substance of their conversation, which lasted about two minutes. *Id.* at 22. Therefore, the Supreme Court of Missouri stated:

> There has been no showing that anything relating to the case on trial was discussed during the conversation or that any prejudice to appellant's rights resulted[.] ... [W]hile the conduct of a prosecuting witness in even innocently visiting with the jurors is to be avoided, nevertheless, the court had broad discretion in determining whether a mistrial should be declared[.]

*Id.* (internal quotation and citation omitted).

■ Similarly, here, there has been absolutely no showing that anything related to the case was discussed during the alleged conversations. The only testimony regarding the content of the communications came from Lynxwiler, who testified that the judge spoke with the bailiff once the matter was brought to their attention and the bailiff had indicated that the jurors did not speak about the case with other people.[8] The conversations were nothing more than, " 'hey, how are the kids' " and "pleasantries." Neither Shawn nor Heather heard what was said during the alleged conversations.

■ In this case, there was no evidence that the topic of the conversations were related to the trial. When matters are "casual, brief and totally unrelated to anything associated with the trial," there is no prejudice to the defendant. *State v. Baum,* 714 S.W.2d 804, 811 (Mo.App. S.D. 1986). Outside the possibility that jurors may have been in the presence of police officers that may have testified, there has been no showing that jurors engaged in any misconduct. *See Hicks,* 959 S.W.2d at 122 (finding trial court did not abuse its discretion in denying defendant's motion for mistrial when defendant failed to present evidence of the topic of conversation or any other evidence tending to prove juror misconduct or prejudice).

■ Finally, Denise has failed to show that but for attorney Lynxwiler's failure to pursue a mistrial, the trial court would have granted a mistrial. *Storey,* 901 S.W.2d at 893. A mistrial is not granted simply because a juror is observed talking to someone, *unless* there is a showing that the communication related to the trial and that the communication resulted in prejudice to defendant. "Granting a mistrial is a drastic remedy that should be used only when necessary to cure grievous

---

8. Denise alleges the jury was tainted by the outside communication, yet presented no testimony from the jurors, police officer witnesses, or the bailiffs at the motion hearing. Without testimony or evidence that the communication was more than "pleasantries," Denise failed to establish juror misconduct.

prejudice." *State v. Dunn,* 21 S.W.3d 77, 83 (Mo.App. S.D.2000). The evidence showed that if any communication did in fact happen between jurors and "other people" in this case, it was nothing more than harmless discussion. An exchange of "pleasantries" does not automatically result in "grievous prejudice" to a defendant requiring trial court grant of the drastic remedy of a mistrial.

Accordingly, the trial court did not clearly err in finding trial counsel was not ineffective for failing to pursue a mistrial. Point denied. The motion court's judgment is affirmed.

GARY W. LYNCH, P.J. and NANCY STEFFEN RAHMEYER, J., concur.