THE STATE v. THOMAS ASBURY, Appellant.—36 S. W. (2d) 919.

Division Two, March 25, 1931.

N. T. Cave, W. H. Sapp and Ruby M. Hulen for appellant.

Stratton Shartel, Attorney-General, and Albert Miller, Assistant Attorney-General, for respondent.

HENWOOD, J.—By an indictment filed in the Circuit Court of Boone County, the defendant is charged with murder in the first degree. The venue was changed to the Circuit Court of Callaway County, where a jury found him guilty of manslaughter and assessed his punishment at imprisonment in the penitentiary for ten years. From the judgment and sentence entered in accordance with the verdict, he has, in due course, perfected an appeal to this court.

The defendant does not challenge the sufficiency of the evidence, but does seriously contend that he is entitled to a new trial on the ground that the jurors were not kept together "after the case had been finally submitted to them and after they had begun their deliberations thereon."

We have concluded that the defendant is right in this contention. Therefore, a detailed statement of the evidence adduced at the trial would serve no purpose in this opinion. It will suffice to say that Matt Frost, the victim of the alleged murder, was shot with a pistol and killed by the defendant, as the result of an altercation between them, while they and several other men were engaged in "shooting craps" for money on the side of a public road in Boone County, about midnight, September 15, 1928, under the front lights of an automobile.

Section 3683, Revised Statutes 1929, provides that: "When the argument is concluded, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer who, *in case of a felony,* shall be sworn to keep them together in some private room or convenient room or place and not permit any person to speak or communicate with them, nor do so himself unless by order of the court, or to ask them whether they have agreed upon their verdict; and when they have agreed, he shall return them into court, or when ordered by the court. The officer shall not communicate to any person the state of their deliberations." (Our italics.)

Section 3734, Revised Statutes 1929, provides that "the court may grant a new trial for the following causes, or any of them: . . . second, when the jury has been separated without leave of the court, after retiring to deliberate upon their verdict, or has been guilty

of any misconduct tending to prevent a fair and due consideration of the case; . . ."

Referring to these statutes, Judge MACFARLANE said: "A failure to observe the requirements of Section 1910 (now Sec. 3683) will be cause for a new trial under Section 1966 (now Sec. 3734). These sections have been construed, by this court, in a number of cases. They are held to be mandatory to the extent, at least, of preventing any opportunity for misconduct on the part of jurors, or suspicion of improper influences upon them. [Cases cited.] If, after the case has been finally submitted, and before verdict, it be shown that opportunity was given for improper influences to be used on any juror, that alone would require a new trial, under the construction put upon Section 1966 by the court, in the cases last cited. The intention of the Legislature in adopting Sections 1910 and 1966, as construed, was to require a new trial whenever there was such a separation of the jury as gave opportunity for outside influences, and to cut off inquiry as to whether such influences were, in fact, brought to bear upon it." [State v. Orrick, 106 Mo. l. c. 126, 17 S. W. l. c. 179.]

We have strictly adhered to this construction of these statutes in all subsequent adjudications. [See State v. Howland, 119 Mo. 419, 24 S. W. 1016; State v. Tarwater, 293 Mo. 273, 239 S. W. 480; State v. Connor, 274 S. W. 28; State v. Hayes, 19 S. W. (2d) 883.]

In the recent case of State v. Hayes, supra, l. c. 886-887, DAVIS, C., said: "Following the interpretation of our statutes by the adjudicated cases on the subject, we think it was the intention of the Legislature, where the jurors separate, without permission of the court, unattended by any officer, after the cause has been submitted to them to deliberate upon a verdict, where an opportunity was afforded for outside or sinister influences, to forestall inquiry as to whether any outside or sinister influence was exerted on them, thus requiring the courts to grant defendant a new trial."

The record shows that the trial commenced Wednesday morning, and that, upon the conclusion of the arguments of counsel, "at 9:55 P. M." Thursday night, "the oath to safely keep the jury, etc., was administered to Sheriff J. C. Owen and Deputy Sheriff O. B. Suggett, and the jury retired to consider of their verdict."

In support of his motion for a new trial, the defendant called Mr. O. B. Suggett, deputy sheriff, as a witness, and he testified, in substance, as follows: Immediately after the case was submitted to the jury, Mr. Maddox, another deputy sheriff, took the jury from the court room to the jury room, where they deliberated about thirty minutes. Then they were taken back to the court room, and, after a "communication" between their foreman and the trial judge, he (Suggett) took them to "their sleeping quarters" in the Palace Hotel in the city of Fulton. From that time, about eleven o'clock

Thursday night, until about seven o'clock Friday morning, the jurors occupied five non-connecting rooms on the third floor of the hotel, three of these rooms being adjoining rooms on the west side of a hallway extending north and south and two being adjoining rooms on the south side of a hallway extending east and west. One room was occupied by four jurors, and each of the other four rooms was occupied by two jurors. He was the sole officer in charge of the jurors, and he stayed with two of them in one of the rooms on the south side of the hallway extending east and west. The room occupied by four jurors was the only one of the five rooms mentioned that had a toilet. The men's toilet, in general use on the third floor of the hotel, was at the north end of the hallway extending north and south. The doors of the five rooms occupied by the jurors were left open. When asked what he did after he took the jurors to their rooms, he said: "We sat around and talked." He also said he saw all of the jurors "several times" before he went to bed. He went to bed about one o'clock and went to sleep about two o'clock. One of the jurors in the room occupied by him went to the men's toilet above mentioned before he went to bed, and one of the jurors in the adjoining room went to the toilet after he went to bed but before he went to sleep. He did not accompany either of these jurors to the toilet, and did not know whether there were any other persons in the toilet when they went there. He did not know how many of the jurors went to the toilet, nor what the jurors did, from two o'clock until seven o'clock Friday morning, when he took them "together" to breakfast, and then to the jury room in the court house.

On behalf of the State, Mr. Waldo F. Smith, owner and proprietor of the hotel, testified: According to the hotel register, the clerk of the hotel and five guests, including the court reporter, occupied rooms on the third floor of the hotel that night. One of the guests, registered as "Mr. Winston T. Howland of Des Moines, Iowa," was assigned to a room adjoining one of the rooms occupied by two jurors on the south side of the hallway extending east and west. Mr. Howland's room was "at the head of the stairway." It had a toilet, but the rooms occupied by the clerk of the hotel and the other guests mentioned did not have a toilet.

Thus it appears that the jurors in this case were not kept together, nor under the surveillance of an officer, after the case was submitted to them; that, about eleven o'clock Thursday night, they were allowed to separate into four pairs and one group of four, and to remain so separated, in five non-connecting rooms on the third floor of a hotel, with the doors of the rooms left open, until seven o'clock Friday morning; that the lone officer in charge of all of them stayed in a room occupied by only two of them; that six other rooms on the third floor of the hotel were assigned to six other men,

including the clerk of the hotel and the court reporter; that the room assigned to four jurors and a room assigned to one of the six other men were the only rooms provided with toilets, among the eleven rooms mentioned; that, before the officer in charge of the jurors went to sleep, at two o'clock Friday morning, he permitted two of the jurors to leave the rooms assigned to them and go, unaccompanied by him, to a toilet which was located at the end of a hallway on the third floor of the hotel, and which was used generally by the guests of the hotel; and that he was unable to account for the conduct of any of the jurors from two o'clock until seven o'clock Friday morning. Under such circumstances, it can hardly be said that the officer prevented "any opportunity for misconduct on the part of jurors, or suspicion of improper influences upon them." On the contrary, we think opportunity was given not only for outsiders to use improper influences on the jurors, but for some of the jurors to use improper influences on other jurors. In other words, it is our conclusion that there was such a failure to observe the provisions of Section 3683 as to entitle the defendant to a new trial under the provisions of Section 3734.

The defendant also complains of alleged separations of the jury during the progress of the trial and of alleged improper and prejudicial remarks of counsel for the State in their arguments to the jury. These complaints relate to occurrences which are not likely to be repeated at another trial, and, for that reason, need not be considered.

Because of the separation of the jury after the case was submitted to them, the judgment is reversed and the cause remanded. All concur.