THE STATE v. ROBERT WILLIAMS, Appellant.—71 S. W. (2d) 732.

Division Two, May 17, 1934.

*Barton & Moberly* and *H. D. Green* for appellant.

**236**

*Roy McKittrick,* Attorney-General, and *Frank W. Hayes,* Assistant Attorney-General, for respondent.

TIPTON, J.—On April 28, 1933, the Prosecuting Attorney of Shannon County, Missouri, filed an information charging the appellant with the crime of third degree robbery. The case was sent to Howell County on change of venue. A trial in that county resulted in a verdict of guilty and assessed the appellant's punishment at five years in the penitentiary. He has duly appealed to this court.

The appellant lived in Shannon County, Missouri. He was married and had a daughter, Florine Williams, about fifteen years of age. The prosecuting witness, Dave Swyres, was employed by the appellant's mother, who lived a short distance from the appellant. The last of February, 1933, the appellant's daughter was at her grandmother's home and claimed that while she was washing dishes Swyres attempted to rape her. She complained about it to her grandmother

and went home where she informed her parents. Shortly after that Swyres went to the appellant's home at which time he had a conversation with the appellant. After that the appellant and his wife went to the appellant's mother's home to see Swyres.

Swyres testified that the appellant and his wife claimed that he had tried to rape their daughter and demanded that he pay them some money or he would be prosecuted. At this time he paid the appellant $300. Appellant and his wife then went to Oklahoma for five days and when they returned they again demanded of Swyres $500, but he told them he did not have the money, but he gave the appellant's wife $200 and a key to a store building which he owned.

There was evidence that appellant was being prosecuted in the Federal court at the time; that the money obtained was used for the purpose of assisting the appellant in that prosecution, and that he made the statement that the reason he obtained the money from Swyres was because he needed it in defending himself in the Federal court.

The evidence on the part of the appellant was to the effect that the money which was received from Swyres was in settlement of damages claimed by the appellant and his wife for the attempted rape and that no promise was made not to prosecute. Appellant claimed that he had nothing to do with getting the money from Swyres. Swyres testified that he was told that if he did not pay the money he would be prosecuted. Other essential facts will be stated in the course of this opinion.

I. The appellant in his brief complains that the trial court failed to fully instruct the jury; that the attorney who defended him in the circuit court did not have sufficient legal ability to properly defend him, and that certain testimony given was not admissible. We are precluded from reviewing these assignments of error because they were not called to the attention of the trial court in the appellant's motion for a new trial. [State v. Cox, 22 S. W. (2d) 797; State v. Preslar, 300 S. W. 687, 318 Mo. 697; State v. Sharp, 300 S. W. 501; and State v. Whitener, 329 Mo. 839, 46 S. W. (2d) 579.]

The appellant relies upon the case of State v. Johnson, 6 S. W. (2d) 898, for the proposition that it is necessary for the court to give proper instructions covering the issues in the case. That case is not in point because it is said in that case "The point is first presented in the motion for a new trial."

II. The first assignment in appellant's motion for a new trial is, "That the verdict is against the law and the evidence," and the fourth assignment is, "That the verdict of the jury was a result of passion and prejudice against this defendant."

The first assignment of error is too general to comply with Section 3725, Revised Statutes 1929, and presents nothing for our review. "No facts are shown upon which to base the charge that the verdict is the result of passion and prejudice, and therefore we are without power to interfere with the verdict." [State v. Maness (Mo.), 19 S. W. (2d) 628; State v. Smith, 68 S. W. (2d) 696, l. c. 697.]

■ III. The appellant's second and third assignments of error are that the evidence was insufficient to support the verdict of the jury and sentence of the court.

On this point we quote from the testimony of the prosecuting witness:

"Well, Bunk and his wife came down and claimed that I had tried to rape their daughter and wanted $500.00." "Well, I let them have $300.00." "They said I had disgraced their daughter and he wanted money to take her away. They wanted $500.00 more and I told them that I didn't have it. I would give them $200.00 and the store building. They were going to prosecute with the law for a rape case." "They claimed I tried to rape their daughter." "Well, they claimed they were going to prosecute with the law for a rape case if I didn't hand the money over." "Well, they claimed they were going to prosecute me." "They wanted $500.00. They claimed I tried to rape their daughter and they were going to prosecute me if I didn't." "Well, they claimed they would prosecute me for trying to rape the girl and I handed the money over."

The appellant was charged with violation of Section 4060, Revised Statutes 1929. This section is as follows:

"If any person shall, either verbally or by a written or printed communication, accuse or threaten to accuse another of a felony, or shall threaten to do any injury to the person or property whatever of anyone, with a view or intent to extort or gain any money or property of any description belonging to another, and shall, by intimidating him with said accusation or threat, extort or gain from him any money or property, every such person shall be deemed guilty of robbery in the third degree."

In the case of State v. Patterson, 271 Mo. 99, 196 S. W. 3, l. c. 5, we said:

"It was not what Patterson said in exact terms to Ibsen which wrought upon his fears, but what he intimated and what he led him by insinuations to believe. He indicated to him that he had committed a crime; that he was in a bad fix; that Deuser was likely to push the matter to the utmost. Deuser was a terrible fellow, the bogyman in the background, threatening to do all kinds of mischief which Ibsen's morbid imagination might conjure up; he had to be bought to prevent his filing a complaint.

"However, even if that were not so, if the jury should have found that the fears excited in Ibsen only related to exposure and publicity, still the threat would be within the terms of the statute, included in the words, 'accuse or threaten to accuse.' Indeed, it would make little difference to the victim whether the blackmailer meant to prefer a formal charge or make the matter public so that officers whose duty it is to enforce the law might do it. One who is so constituted that he may be victimized in that manner sees visions of himself in the toils of the law in any vague intimation that some one will 'tell it to the police.'

"Statutes in other states similar to our Section 4532 have been construed to include threats of exposure. It has been held that 'to accuse' in an indictment charging one with the violation of such a statute, does not mean to make a complaint before a magistrate, but to impute a crime as a means of inducing one to pay money, and includes any public accusation. [Commonwealth v. Andrews, 132 Mass. 1. c. 264; Robbins v. Smith, 47 Conn. 182; State v. South, 5 Rich. (S. C.) 489; People v. Braman, 30 Mich. 460.] In the case of State v. Stewart, 90 Mo. 1. c. 512, 2 S. W. 790, in a prosecution under the blackmail section, the threat was no more definite than here, and seemed to involve mainly 'making the matter public.' "

We think the evidence set out above is sufficient to show that the prosecuting witness parted with his money out of fear of exposure to a criminal charge against him. It was sufficient to show that he parted with his money because he was intimidated.

 The appellant further contends that there is no evidence to show that he made "a single threat of prosecution against Dave Swyres." Swyres testified that in the latter part of February, 1933, the appellant and his wife came down to the place where he was living and told him that he had tried to rape their daughter and demanded that he pay them money. At this time he paid the appellant $300. His exact words were, "No, Bunk got it that time, and the second time, when they went to Oklahoma and was gone five days, they came back and the old lady asked how much money Bunk got off of me. I said $300.00."

The appellant did not deny that he and his wife accused Swyres of attempting to rape their daughter, and he admitted that his wife used some of the money for the purpose of financing the defense of a criminal prosecution in the Federal court. The appellant admitted he was present when his wife accused the prosecuting witness of attempting to rape his daughter, but he and his wife claimed the money was paid as a compromise of a civil action for damages. There was testimony to the effect that the appellant had admitted that he made Swyres pay because he needed the money for his defense of the case pending in the Federal court.

In the case of State v. Smith, supra, we quoted with approval from the case of State v. Kowertz, 317 Mo. 426, 297 S. W. 358, l. c. 361, wherein we said:

"The rule to be applied here is elementary and is universally followed. It is well stated in 16 Corpus Juris, 133, as follows:

" 'The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting. And it has also been held that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.' "

■ Appellant further contends that attempted rape is not a felony within the meaning of the statutes. Rape is defined under Section 3999, Revised Statutes 1929, and is a felony that may be punishable by death. Under Section 4442, Revised Statutes 1929, attempted rape would be punishable for not less than two years in the penitentiary, and therefore, is a felony.

We think the testimony, attending circumstances and the inferences to be drawn therefrom are sufficient to sustain the verdict of the jury.

■ IV. The appellant complains of the court admitting testimony as to his moral character. The appellant was a witness in his own behalf. "Since the case of State v. Clinton, 67 Mo. 380, 29 Am. Rep. 506, we have uniformly ruled that where a defendant becomes a witness he could be discredited by inquiring into his moral character the same as any other witness. [State v. Baird, 288 Mo. 62, 231 S. W. 625, 15 A. L. R. 1035; State v. Scott, 332 Mo. 255, 58 S. W. 275.]" [State v. DeShon, 334 Mo. 862, 68 S. W. (2d) 805, l. c. 809.]

V. The court properly refused to admit testimony of Maude Williams, as the appellant attempted by this witness to attack the character of the prosecuting witness by showing that he had attempted to rape other girls.

The character of a witness cannot be impeached by specific acts of immorality, except on cross-examination of the witness. [State v. Nanna, 322 Mo. 1180, 18 S. W. (2d) 67; State v. Taylor, 320 Mo. 417, 8 S. W. (2d) 29; and State v. Nasello, 325 Mo. 442, 30 S. W. (2d) 132.]

■ VI. In appellant's motion for a new trial he complains for the first time that Ernest Lannum, a defense witness, did not appear at the trial. The record does not disclose that the appellant made any complaint to the trial court that the witness did not appear, or that

he asked for a continuance of the case because of the absence of this witness, or that he requested an attachment of this witness to compel his appearance. The witness might have been present and the appellant failed to call him as a witness. Allegations in a motion for a new trial do not prove themselves. [State v. Stogsdill, 324 Mo. 105, 23 S. W. (2d) 22.] Under the facts shown in the record, the absence of this witness is not sufficient grounds for the granting of a new trial.

VII. The final assignment of error in the appellant's motion for a new trial is, as follows:

"That at a time when the jury were in their room, deliberating and after they had received instructions from the Court and argument of the counsel, and after they had been placed in the custody of the Sheriff, there was an extra man in the jury room, who was not a member of the said jury, nor a member of the regular panel of the Howell County Circuit Court for the June term."

The appellant does not raise this point in his brief. The facts developed at the time the motion for a new trial was heard were that the trial took place in an old church building in West Plains. G. W. Winningham was in West Plains on the day of the trial for the purpose of collecting some fees due him from the court clerk; that the most direct route from the courtroom to the clerk's office was through the jury room; that when he went through this room to the clerk's office, it was empty; that he inadvertently passed through the same room returning from the clerk's office, but that he had no communication with the jury and did not know there was a jury deliberating in the jury room, and that no member of the jury had any communication with him; that he lived in Howell County and did not know any person connected with the case. These facts stand uncontradicted. "Outsiders have no right in the jury room or place occupied by the jury, but the mere temporary presence of outsiders has in many cases been held to have no effect upon the verdict, where no prejudice could have resulted from such intrusion, and it was apparent that the intrusion was not for such purpose." [State v. Spaugh, 200 Mo. 571, 98 S. W. 55.]

In the recent case of State v. Malone, 333 Mo. 594, 62 S. W. (2d) 909, l. c. 915, we said:

"We have consistently held that a separation of the jury in violation of the statute is ground for reversal unless it is affirmatively shown that the jurors were subjected to no improper influence and that no prejudice to the defendant resulted. [State v. Orrick, 106 Mo. 111, 17 S. W. 176; State v. Jeffries, 210 Mo. 302, 109 S. W. 614, 14 Ann. Cas. 524; State v. Schaeffer, 172 Mo. 335, 72 S. W. 518; State v. Asbury, 327 Mo. 180, 36 S. W. (2d) 919; State v. Hays, supra.]

The same principle should apply to misconduct of the jury such as was here shown. In the case before us there was no sufficient showing that the improper reference in the jury room to facts not in evidence and in their nature damaging to defendant's cause did not in fact operate or may not have operated to defendant's prejudice.''

We hold that the facts in evidence affirmatively show that the appellant was in no way prejudiced by the fact that Winningham passed through the jury room while the jury was deliberating. That the evidence overcame the presumption of improper influence by the fact that a stranger was in the jury room. The State sustained the burden to overcome the presumption of improper influence and that the appellant was in no way prejudiced.

Finding no reversible error in the record, the judgment is, therefore, affirmed. All concur, except *Ellison, P. J.*, absent. ·