THE STATE v. WILLIAM DODSON, Appellant.—92 S. W. (2d) 614.

Division Two, March 21, 1936.

*Lacy & Edwards* for appellant.

*Roy McKittrick,* Attorney General, and *Wm. Orr Sawyers,* Assistant Attorney General for respondent.

TIPTON, P. J.—In the Circuit Court of Macon County, Missouri, an information was filed charging the appellant with the crime of robbery in the first degree. It alleged that on June 16, 1934, the appellant robbed Mattingly Brothers' store located in the city of Macon, Missouri. On November 1, 1934, he was found guilty as charged in the information and his punishment assessed at five years' imprisonment in the State penitentiary. From the judgment and sentence entered in accordance with the verdict he has duly appealed to this court.

It would serve no useful purpose to detail the evidence adduced at the trial as appellant does not challenge its sufficiency, but does contend. that he is entitled to a new trial on the grounds that the jurors were not kept together both before and after the case had been finally submitted to them and because of the misconduct of the jurors and the sheriff in charge of them.

Section 3682, Revised Statutes 1929, provides that: ''With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial in all cases of felony, except in capital cases.'' The record does not show that the prosecuting attorney and the defendant entered into any such agreement, but on the contrary the jury was at all times placed in charge of the sheriff and his deputies. Therefore, this section is not applicable to the case at bar.

Section 3683, Revised Statutes 1929, is as follows:

''When the argument is concluded, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer who, in case of a felony, shall be sworn *to keep them together in some private or convenient room or place and not permit any person to speak or communicate with them, nor do so himself,* unless by order of the court, or to ask them whether they have agreed upon their verdict; and when they have agreed, he shall return them into the court, or when ordered by the court. The officer shall not communicate to any person the state of their deliberations.'' (Italics ours.)

Section 3734, Revised Statutes 1929, provides that: ''The court may grant a new trial for the following causes, or any of them: . . . second, when the jury has been separated without leave of the court, after retiring to deliberate upon their verdict, or has been guilty of any misconduct tending to prevent a fair and due consideration of the case.''

Since the enactment of the above-named section we have consistently ruled, in felony cases, that if the separation or misconduct of

the jury took place during the progress of the trial the verdict will be set aside, unless the State affirmatively shows that the jurors were not subject to improper influences. But, if after the case has been submitted to the jury for its determination and before a verdict has been reached, there is an opportunity that improper influence could be used on any juror, that alone will require a new trial, even though it be shown that improper influence was not exercised. [State v. Orrick, 106 Mo. 111, 17 S. W. 176; State v. Howland, 119 Mo. 419, 24 S. W. 1016; State v. Tarwater, 293 Mo. 273, 239 S. W. 480; State v. Connor, 274 S. W. 29; State v. Hayes, 323 Mo. 578, 19 S. W. (2d) 883; State v. Asbury, 327 Mo. 180, 36 S. W. (2d) 919; State v. Malone, 333 Mo. 594, 62 S. W. (2d) 909; State v. Shawley, 334 Mo. 352, 67 S. W. (2d) 74; State v. Trainer, 336 Mo. 620, 80 S. W. (2d) 131; State v. Magee, 336 Mo. 1082, 83 S. W. (2d) 98.]

The record shows that the trial commenced Tuesday, October 30, 1934, at nine A. M., and the case submitted to the jury at eleven-six A. M., Thursday, November 1, 1934.

The appellant's motion for a new trial alleged separation and misconduct of the jury and misconduct of the officers in charge of it, both prior to and after the case was submitted to the jury for its decision. In support thereof, the appellant adduced both oral testimony and affidavits.

That part of the affidavit of Waldo Edwards, an attorney for the appellant relating to the conduct of the jury and the officers in charge of it, after the case was submitted, is as follows:

"After the administration of the solemn oath to the sheriff or bailiff, he took the jury to the wash room in the court house and while they were in the wash room, the sheriff told the jury and the court, who was then on the first floor of the court house, that he was going to take the jurors to see the 'New Zephyr' train that was being exhibited in Macon on that day between the hours of 11:30 and 12:30, and that the judge told him to take that jury back into the court house and to the jury box, and the judge of the court took the bench and told the jury to retire and deliberate and try to reach a verdict in the case; and every juror had his hat with him to go to view the new train; that the sheriff took the jurors to the jury room and said something to them that was not audible to this affiant; that immediately the sheriff came out of the jury room and when in the position of about the middle of the court room, and announced in a loud and sonorous tone, that the jury wanted to go to the Burlington Railroad tracks and see the 'New Zephyr' train; this was objected to by counsel of the defendant at that time, and at all other times, and the court told the sheriff to tell the jury that they could go down to see the train at ten minutes to twelve,

and this was objected to by counsel for defendant, and the court announced at the time the jury had a much more important matter in its hands than to be going out viewing railroad trains, and going to picture shows and dances; that the sheriff did not go back and knock on the jury room to communicate with the jury but that he went into his own office and used the telephone, and when he was using the telephone the deputy sheriff closed the door to the sheriff's office so that persons in the court room and this affiant could not hear and did not hear what the sheriff, said over the telephone; that in about twenty minutes the jury came out of the room to which the sheriff had taken them, and in company with the sheriff and his deputy, Ralph Talbot, went down to the Burlington Railroad tracks where there were assembled a great many people, and the sheriff and his deputy took the jury through the vast crowd of people and around the train that was on exhibition and a great many persons were talking to the jury and in the presence of the jury were talking about the Dodson trial which had just been completed, and from the Burlington Railroad tracks the sheriff took the jury to the county jail building and at about fifteen minutes to one he returned them to the court room and took them into a room that had been previously used as a jury room and on this day and is now being used as a law office and by an employment bureau, and in said room where the jury was deliberating were a great many law books consisting of State records, Southwestern Reporter; Corpus Juris; Rulings in Case Law; Law Texts of Missouri, and the Statutes of Missouri; that in said room was also a telephone connected with the Macon telephone system.

"Affiant further states that the sheriff and his deputy were talking to the jurors while they were viewing the new Burlington train and were talking to the jurors while they were walking through the streets of Macon, but this affiant did not hear what they said."

The affidavits of Chester M. Browning, Clara Selby and Estella Gaunt Newmaker were similar to the affidavits of Waldo Edwards. The evidence showed that between 1500 and 3000 people were on the station platform to see the "Zephyr" train. The crowd on the streets leading to the railway station and at the station was so large it was necessary to use the local police and the State Highway Patrol to control it.

Several of the jurors made affidavits to the effect that they were taken to the station to view the "Zephyr" train accompanied by the sheriff and one of his deputies and the jurors were not separated from each other, but were kept together in a body and "no one was permitted to talk or converse with the affiant or the other members of the jury and no opportunity was afforded for said jury to be approached or prejudiced by outside influences." The last clause

is certainly a mere conclusion. The sheriff and his deputy made similar affidavits.

We think the appellant is entitled to a new trial on the admitted facts in this case. There is no dispute that after the jury started its deliberation, the sheriff took the jury down to the railway station which was crowded with people who were there to see the exhibition train of the Burlington Railroad. It may be true that he kept the jury together, but we are unable to see how he could keep them from coming in contact with the crowd. He took them across the platform twice and they were on this trip for fifty-five minutes. The evidence shows that the courthouse was only five blocks from the station. Certainly during this time an opportunity was given for some one to say something to some juror while this jury was at this public gathering. Granted that no individual juror talked to any person in the crowd, it does not follow that they did not hear the case discussed while they were at this gathering. Sections 3683 and 3734, supra, contemplate that after the case has been given to the jury for its determination it should be kept away from outside influence, and away from other people as far as practical. We believe these sections would preclude the sheriff from taking the jury to large gatherings of people, such as a circus, theatre, church or a political meeting, even if the jury were kept in a body, as the jury would come in contact with crowds at such places and an opportunity would be afforded for improper influences on a juror.

We have already shown that such an opportunity entitles the defendant to a new trial, even if the evidence fails to show that in fact improper influence was exercised. We do not mean to say that a jury during its deliberation may not be taken into a public place, such as a public dining room, provided the jury is kept away from the other patrons, or that the sheriff may not take the jury for a walk so long as he does not unnecessarily take them into large gatherings of people.

The record also shows that during the first night of the trial the sheriff took the jury to a picture show. He did the same thing the second night and then he took the jury to a dance. There was some evidence that the jury was kept in a body away from other people at these places. These incidents occurred before the case was submitted to the jury. As this case must be reversed and remanded, it will not be necessary for us to decide whether the State affirmatively showed that the jurors were not subjected to improper influences during their attendance at the theatres and the dance. We cannot refrain from taking this opportunity to state that it is our view of the law that during the progress of a trial in a felony case, the jury should not be permitted to attend public gatherings, even if the jury are not separated in such places.

It follows that the judgment of the circuit court should be reversed and remanded. It is so ordered. All concur.