**STATE of Missouri, Respondent,**

**v.**

**Clyde S. BURKHART, Appellant.**

**No. WD 30694.**

Missouri Court of Appeals,
Western District.

March 30, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 1981.

Application to Transfer Denied June 8, 1981.

Glenn D. Manis, Liberty, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P. J., PRITCHARD, J., and SWOFFORD, Senior Judge.

PER CURIAM.

Clyde Burkhart was convicted by a jury of uttering a forged instrument in violation of § 561.011(3), RSMo 1969, and a sentence of three years was imposed. On this appeal a number of points are raised but the dispositive point is that one of the jurors was allowed to talk with a detective who was a witness for the State after the case was submitted to the jury. Other points which may recur will be noticed. Reversed and remanded.

In May, 1978, the home of James Repass was broken into and a United States Treasury check and some deposit slips from Repass' checkbook were taken. Early the next morning, Repass called his bank, Boatmen's North Hills Bank, and told Mrs. Tuck of the theft. Mrs. Tuck immediately circulated information concerning the theft to all of her tellers. A short time later, Bonnie Makris, who was a teller at a drive-in window, was presented the treasury check payable to Repass together with a deposit slip. The check had been endorsed with the name of James Repass together with his account number. The deposit slip had been made out to deposit part of the proceeds and to receive the balance in cash. Mrs. Makris had processed the transaction and had placed the cash in the bucket to be sent to the automobile when she noticed it was the Repass check described in Mrs. Tuck's notice. Mrs. Makris immediately pushed the button to cause the bucket to return to her window and explained to the men she had made a mistake. She alerted Mrs. Tuck, and on instructions from her, Mrs. Makris informed the two men it would be necessary for them to come into the bank to complete the transaction. Thereupon the two men drove away and did not enter the bank.

Mrs. Makris positively identified Burkhart at trial as the man who was sitting on the passenger side of the car. She stated Burkhart had passed the check and deposit slip to the driver for placement in the buck-

et to be sent to Mrs. Makris. Other evidence revealed that a palm print of Burkhart was found on the treasury check.

Burkhart first challenges the sufficiency of the evidence. The above statement of facts constituted those facts the jury could have found beyond a reasonable doubt. On this review the evidence must be considered in the light most favorable to the State together with all favorable inferences reasonably to be drawn therefrom. *State v. Rollie,* 585 S.W.2d 78, 89–90[21] (Mo.App. 1979).

Burkhart challenges the identification made by Mrs. Makris because she testified that she had been unable to identify Burkhart from photographs shown to her prior to trial. This inability to recognize photographs went only to the weight and credibility of Mrs. Makris' testimony which was for the jury to determine. *State v. Bennett,* 559 S.W.2d 248, 250 (Mo.App.1977).

From the above facts the jury could have found that Burkhart participated in the uttering of the forged instrument when he handed the check and the deposit slip to the driver of the car for presentation to the bank. Any form of affirmative participation that Burkhart aided, abetted or encouraged another in the commission of a crime is sufficient to support a conviction. *Rollie,* 585 S.W.2d at p. 90[22]. There was sufficient evidence to support the finding of guilt by the jury.

Burkhart complains of the admission of the check, deposit slip, and a blowup photograph of the palm print found on the check because he contends these matters were part of the closed records within the meaning of § 610.105, RSMo 1978. It should first be noted that when the check and deposit slip were offered in evidence counsel for Burkhart stated that he had no objection. Any possible error in the admission of these exhibits was waived and not preserved for review because of that statement. *State v. Leigh,* 580 S.W.2d 536, 551[24] (Mo.App.1979). The only objection made to the introduction of the blowup photograph was that the State had failed to produce it in response to Burkhart's request for discovery. The objection that the photograph was barred under § 610.105 is beyond the objection made in the trial court, and it is well settled that an objection may not be broadened on appeal to assert grounds not presented to the trial court. *State v. Lenza,* 582 S.W.2d 703, 710[13, 14] (Mo.App.1979), cert. denied 444 U.S. 1021, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980).

However, to set the matter to rest that these exhibits are closed records within the meaning of § 610.105, this court will consider such contention even though it considers the same to be specious. Section 610.100 provides that if a person is arrested and not charged with an offense within thirty days, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested. If there is no conviction within one year after the records are closed, the records are expunged in any city or county having a population of 500,000 or more. Section 610.105 provides that if a person arrested is charged but the case is subsequently nolle prossed, dismissed, or the accused is found not guilty, official records pertaining to the case shall thereafter be closed records to all persons except the person arrested or charged. This court has no difficulty in construing § 610.105 together with § 610.100 to conclude that the official records mentioned in § 610.105 refer to the records mentioned in § 610.100 of the arrest and any detention or confinement incident thereto. The legislature certainly was aware that a new charge may be brought after a charge has been nolle prossed. *State v. Berry,* 298 S.W.2d 429, 431–2[3–5] (Mo.1957). To hold that official records in § 610.105 refers to the evidence in a case which had been nolle prossed would effectively bar any future prosecution. Clearly the legislature did not intend that result. Construing § 610.100 and 610.105 together, this court concludes that the official records in § 610.105 refer only to the record of arrest and of any detention or confinement incident thereto.

█ Burkhart further contends the trial court erred in failing to quash the grand jury indictment on which he was tried because the indictment was unsupported by substantial and competent evidence. The grand jury is the judge of the sufficiency of the evidence to support its indictment. *State v. Ivey,* 442 S.W.2d 506, 508[2, 3] (Mo.1969). Thus the trial court was not authorized to delve into the evidence presented to the grand jury to determine if it were competent and sufficient.

█ Burkhart raised in his motion for new trial the misconduct of a juror as the jury was leaving the courtroom after the case had been submitted to it for deliberation. His motion was supported by the testimony of an associate attorney of Burkhart's counsel. This attorney testified that after the jury had left the courtroom following the submission of the case to it, she left the courtroom and observed Detective Wiersma, who had investigated the case and who had testified on behalf of the State, talking with one of the jurors. The attorney testified that shortly after she observed the two talking the assistant prosecutor who had tried the case approached the two and told the detective not to talk with the juror. The attorney testified she could not hear any part of the conversation.

In *State v. Dodson,* 338 Mo. 846, 92 S.W.2d 614, 615[1] (1936) the court stated:

> Since the enactment of the above-named section, [now § 547.020, RSMo 1978] we have consistently ruled, in felony cases, that if the separation or misconduct of the jury took place during the progress of the trial, the verdict will be set aside, unless the state affirmatively shows that the jurors were not subject to improper influences. But if after the case has been submitted to the jury for its determination, and before a verdict has been reached, there is an opportunity that improper influence could be used on any juror, that alone will require a new trial, even though it be shown that improper influence was not exercised.

Section 547.020(2) provides the court may grant a new trial when the jury, after retiring to deliberate upon their verdict, has been guilty of any misconduct tending to prevent a fair and due consideration of the case. Section 546.240, RSMo 1978, provides in part:

> When the argument is concluded, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer who, in case of a felony, shall be sworn to keep them together in some private or convenient room or place and not permit any person to speak or communicate with them, nor do so himself, unless by order of the court, or to ask them whether they have agreed upon their verdict; and when they have agreed he shall return them into court, or when ordered by the court.

*Dodson* considered the statutes in force which are the same as §§ 546.240 and 547.-020 when it announced the rule above quoted. *Dodson* draws a distinction between events which occur during the course of the trial and those which occur after the case has been submitted to the jury for its determination and before a verdict has been reached. The contact between Detective Wiersma and the juror took place after the case had been submitted to the jury for its determination and prior to verdict. Under the rule followed in *Dodson* if there is an opportunity that improper influence could be used on a juror, that alone will require a new trial even though improper influence was not shown or exercised. The rule in *Dodson* has been restated in *State v. Jones,* 363 Mo. 998, 255 S.W.2d 801, 806[8] (1953) and *State v. Edmondson,* 461 S.W.2d 713, 723 (Mo.1971).

The State relies on cases in which the juror misconduct occurred during the course of the trial. Under *Dodson* the rule to be followed in this case is that relating to misconduct which occurred after submission of the case to the jury and before the verdict was returned. Under *Dodson* the juror misconduct in talking with a State's witness requires reversal even though no improper influence was shown to have been exercised. The other matters raised on this appeal need not recur on a retrial, but, in

any event, the parties are advised as to those points and will have the benefit of the briefs.

The judgment is reversed and the cause is remanded for a new trial.

## ON MOTION FOR REHEARING AND/OR TRANSFER TO THE SUPREME COURT

The State has filed a motion for rehearing or to transfer to the Supreme Court. In its motion the State concedes the opinion has correctly held that contact between the witness and a juror after submission of the case to the jury requires reversal under *Dodson.* However, the State asserts that this court "has made a grievous and palpable error with respect to the facts ...." The State now contends that the contact between the witness and the juror did not take place after the jury had been instructed and was leaving to deliberate, but, in fact, took place at some time prior to the case being submitted to the jury. This contention is based upon some discrepancies in the testimony of the lawyer who testified and placed the time of the contact as being when the jury left the courtroom to begin their deliberation.

At the time this case was briefed in late 1979, Rule 28.18 provided that the Rules of Civil Procedure governing practice and procedure in the Supreme Court and Courts of Appeal in civil cases would govern the practice and procedure in criminal cases with respect to briefs. Rule 84.04(f), governing briefs in civil cases, provided that the respondent's brief may adopt the statement of facts of the appellant, or, if not satisfied therewith, the respondent could correct any errors.

The appellant's brief in the statement of facts stated: "Detective Wiersma, a witness and officer of the Court, was seen visiting with a juror just after the case had been submitted for deliberation as the jurors were retiring to the jury room." The State's brief did not correct this statement of fact nor did it contain any contradiction of that statement of fact in the argument portion. In fact, the State's position in its brief was that the contact was immaterial because there was no showing the case on trial was discussed. The State argued that absent any discussion of the case, the granting of a new trial by the trial court was a matter of discretion and no abuse of that discretion was demonstrated.

The State principally relied on *State v. Eaton,* 504 S.W.2d 12 (Mo.1973). In *Eaton* the contact took place after the jury had been selected but before they were sworn. p. 21. *Eaton* held the court had discretion in determining whether a mistrial should be declared under the facts shown.

As the State now concedes, the rule in *Dodson* requires a reversal when the contact is shown to have occurred after the case has been submitted to the jury without regard to the content of any conversation.

The State's motion states that a question as to the time of the contact was raised in oral argument. This court has reviewed the record of the oral argument and finds that the attorney general prefaced a statement concerning a discrepancy in the testimony of the lawyer as to the time of contact with the statement: "It doesn't make a great deal of difference as to the timing." In fact, the attorney general prefaced and ended his reference to the discrepancy with that comment. Nowhere in the argument did the attorney general dispute the statement of fact contained in the appellant's brief. The attorney general summed up his argument on that point by stating the State's position was that it relied on *Eaton* and the court had discretion in this case as to whether or not it should grant a new trial based upon the content of the conversation.

Burkhart relied on the rule in *Dodson* in the trial court. In his brief here he laid the foundation for his argument that *Dodson* required a reversal with his statement of facts that the contact took place after submission. This statement was based on the testimony of the lawyer who witnessed the juror talking with the witness and her testimony that it was after submission. The State's brief distinguished *Dodson* solely on

the ground that this case did not show the same quality of contact, but made no attempt to distinguish the rule announced there and applied in this opinion.

The State, now that it concedes that *Dodson* mandates a reversal for a contact between a juror and a third person after a case is submitted to the jury, attempts for the first time to question the statement of fact in appellant's brief as to the time of the contact. In *Clooney v. Wells,* 252 S.W. 72, 73–4[1] (Mo.1923) the failure of the respondent's brief to controvert the negligence of the defendant in its brief was discussed. The court stated: "What defendant refuses to discuss, upon such vital issue, we may take as a conceded fact." The court held that this constituted a concession of the defendant's negligence as to the rate of speed stating, "the only matter relied upon in the brief is the contributory negligence of plaintiff. The conduct of the case here is a concession of defendant's negligence, as to the rate of speed."

In *Pope v. Terminal R. Ass'n,* 254 S.W. 43, 44–5 (Mo.1923) the court discussed the rule in effect at that time, which is the same as Rule 84.04(f), which allowed the respondent to adopt the statement of facts of the appellant, or, if not satisfied, to make a concise statement to correct any errors. The court stated at p. 45: "Under this rule, where, as here, the respondent makes no statement at all, and makes no corrections in appellant's statement, or in any way indicates his or her dissatisfaction as to appellant's statement, this court, in view of the rule, can take appellant's statement as and for the facts of the case. Counsel are presumed to know the facts of their case, and the rules of the court in relation thereto." The same rule appears in 5 C.J.S. Appeal and Error, § 1344, p. 391.

In this case this court was entitled to accept as a matter of fact the unchallenged statement in Burkhart's brief that the contact between the witness and the juror took place after the case had been submitted to the jury and after it had left the courtroom to begin deliberations. The State has not contradicted that statement until its motion for rehearing. The cavalier treatment given to the timing of the contact in oral argument did not indicate that the State was disputing the statement of fact in the appellant's brief. This was further shown by the fact the State in oral argument rested its defense on this point entirely on *State v. Eaton.* By failing to contradict the statement of fact in the appellant's brief in either its brief or oral argument, under the rule in *Pope* and *Clooney* this court was fully justified in concluding the contact took place after submission and to decide the case on that basis. It is now too late for the State to challenge the statement of fact which proved to be of pivotal importance.

Without retreating from the reliance expressed herein on *Pope* and *Clooney,* it should be pointed out the statement of fact as to the time of contact is fully supported in the record. While the attorney made some equivocal statements on cross-examination she positively stated the time to be as the jury left the courtroom to begin deliberations. The State ignores this testimony and concentrates only on the cross-examination. Further, in its motion the State cites transcript references which indicate in argument before the trial court Burkhart's attorney stated the contact occurred after submission. The assistant prosecutor responded without denying the time of contact. The record does not show any denial by the assistant prosecutor all through the argument and the taking of evidence on the issue, even though he admittedly broke up the conversation. He did not testify although he cross-examined the attorney who testified as to the time. This discussion of the record simply demonstrates that the statement of facts made by Burkhart was fully supported and was not plucked out of thin air.

The State does not raise any other ground for rehearing or transfer. The motion for rehearing is overruled and the motion to transfer to the Supreme Court is denied.