STATE of Missouri, Respondent,

v.

Steven VanSICKEL, Appellant.

No. WD 34940.

Missouri Court of Appeals,
Western District.

July 10, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1984.

Application to Transfer Denied
Oct. 9, 1984.

Thomas J. Marshall, Moberly, for appellant.

John Ashcroft, Atty. Gen., Brooks Pitchie, Jefferson City, for respondent.

Before PRITCHARD, P.J., and SOMERVILLE and KENNEDY, JJ.

PER CURIAM:

Defendant appeals from judgment entered upon a jury conviction in Adair County Circuit Court for assault in the second degree, § 565.060, RSMo 1978, and burglary in the first degree, § 569.160, RSMo 1978. He was sentenced to five years imprisonment on the assault conviction and to ten years imprisonment on the burglary conviction, with the sentences to run consecutively. The court also imposed a $2,000 fine for the assault conviction.

The judgment is affirmed.

Defendant does not challenge the sufficiency of the evidence to support the conviction.

On Thursday evening, November 11, 1982, Kendal Tade, age 15, Mike Harris, age 16, and Kevin Hunt, age 16, were drinking alcohol and smoking marijuana at Kevin Hunt's home in Kirksville while his mother was away for the night. Defendant Steven VanSickel, age 33, owned the Odyssey Arcade in Kirksville, to which the three boys drove later that evening to persuade VanSickel to purchase beer for them. VanSickel purchased beer for them, was invited to come over later to the Hunt home to drink a beer, and then was dropped off once again at the Arcade. At 1:30 a.m. the three boys had just gone to bed at the Hunt home when the doorbell rang, and as Kevin Hunt approached the front door, he found Steven VanSickel had already let himself in the door. The three boys and VanSickel began drinking beer again and eventually, the three boys fell asleep.

Kevin Hunt later awoke in his bed to find VanSickel performing oral sex on him. Hunt ordered VanSickel to leave. He dressed and left. Hunt then awakened Mike Harris and told him what had happened. The two boys walked several blocks to VanSickel's residence, where Har-

ris took a hammer he had picked up in the Hunt home, and with it smashed the headlights, windshield and side windows of VanSickel's car, and put two dents in the hood. They then ran back to Hunt's house.

Kevin Hunt locked the front door, and he and Harris fell asleep once again.

Mike Harris was awake in the Hunt living room at 7:30 a.m. when VanSickel drove up to the house. Harris tried unsuccessfully to awaken Hunt; when Harris heard the front door being kicked, he picked up the hammer. VanSickel kicked the door in, grabbed Harris by the shoulders, and threw him onto a table. He then dragged Harris by the hair onto the porch, they struggled, and VanSickel wrested the hammer from him. Defendant then broke out several windows of Harris' car and swung the hammer at Harris' head. Harris deflected the blow, but VanSickel swung once more and this time broke Harris' jaw with the hammer.

Defendant raises four points on appeal.

## I

Defendant first claims the trial judge abused his discretion in overruling his application for change of venue and change of judge, resulting in fundamental unfairness to defendant.

An application for change of venue and change of judge in felony cases must be filed not later than 30 days after arraignment. Rules 32.03(a), 32.07(c), 32.08.

■ Defendant was arraigned in circuit court on December 20, 1982. On January 28, 1983, defendant's counsel, William Farrar, filed a motion to withdraw. Leave to withdraw was granted to Farrar on February 14, 1983 when Wayne Fraser entered his appearance for defendant. Defendant's application for change of venue and change of judge was filed February 28, 1983, seventy days after arraignment. The trial judge did not err in failing to sustain defendant's motion, the application for which was not filed within the time limits of the statute.

Defendant cites us to Rule 32.09(c) which provides for a change of venue or change of judge "when fundamental fairness so requires," even though not filed within the time limits of the above rules. In support of his motion for change of venue and change of judge, defendant testified at pretrial hearing on March 8, 1983 that the inhabitants of Adair County were prejudiced against him and that the judge too was prejudiced against him because the judge was aware of defendant's prior conviction and of defendant's reputation as a homosexual. The judge, he said, spoke at the bond reduction hearing as if he thought defendant was guilty. Defendant also testified that he had requested of his first attorney, William Farrar, that he file a motion for change of venue and change of judge on his behalf, which Farrar did not do.

At the pretrial hearing on the motion, defendant's evidence of fundamental unfairness requiring a change of judge consisted of his subjective impressions that the judge was prejudiced against him. Attorney Fraser inquired of defendant VanSickel:

Q. Is there a reason why you think a change of judge is necessary in this matter?

A. Yes, sir. At first, you know, I had no objection but then at the last hearing we had here, Judge Normile kind of ruled and said that I was just kind of guilty, and I felt that this wasn't fair. I have only been charged. I have not been proven guilty.

Q. And you got the impression that what was said in court was that you had hit someone in the face with a hammer?

A. Yes.

Q. And it was stated as a fact from your viewpoint?

A. Yes, sir.

As to the fundamental unfairness requiring a change of venue, Attorney Fraser inquired:

Q. Why do you think a change of venue is necessary, Mr. VanSickel?

A. I just don't believe that I will get a fair trial in this matter with the issue at hand.

In ruling on the motion, the judge stated that the particular circumstances of the case did not "of themselves disqualify the inhabitants of the county or of the other counties in the circuit any more than they would the inhabitants of any county in the state." As to his statements at the bond reduction hearing, the record reflects that the judge explained that his statements referred to:

suggestions of counsel to the court as to what the evidence would be, the allegations of the information, the burden the State has, but it related to the issue of the seriousness of the charge, the possible penalties to be imposed, and the matters that were related to bond reduction. The Court did not take them to be true except that it was taken as true that that was [sic] the allegations of the information. . . .

Based on the record, we cannot say that the trial court abused his discretion, or that fundamental fairness in this jury-tried case required either a change of judge or change of venue. This is a discretionary matter best left to the trial judge. No abuse of discretion appears here. *State v. Molasky*, 655 S.W.2d 663, 665–66 (Mo.App. 1983), cert. denied, —— U.S. ——, 104 S.Ct. 727, 79 L.Ed.2d 187.

## II

Defendant next contends that the trial court erred in sustaining the prosecution's challenges for cause to nine veniremen who stated they knew the defendant, his parents or his attorney. One juror stated he was related by marriage to the defendant. Each one said his acquaintance or relationship would not influence him in his consideration of the case. Defendant argues that since no bias or prejudice of these veniremen was shown, the fact of their relationship with defendant, his parents or his attorney standing alone was not sufficient reason to disqualify them for cause.

A criminal defendant is entitled to a panel of qualified veniremen before he is required to make his peremptory challenges. *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983), cert. denied, —— U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246; *State v. Engleman*, 634 S.W.2d 466, 471 (Mo. 1982). There remained a full panel of qualified veniremen after the nine had been stricken. While we do not wish to give unqualified approval to every means of striking excess veniremen from the list,[1] we find no prejudicial error in the judge's striking these particular veniremen from the panel. Although they had said they could consider the issues without bias, still it was not unreasonable for the judge to suppose that their previous knowledge of the defendant would affect their interpretation of the testimony. Although they might glibly deny that they would have any difficulty in deciding the case without prejudice, still their minds would without doubt be trammelled and they would find themselves in some emotional conflict as the case proceeded. It is hard to say that defendant was prejudiced when the fully qualified panel remained from which defendant could make his peremptory strikes. See *State v. Gordon*, 543 S.W.2d 553, 555 (Mo.App.1976); *State v. Carter*, 544 S.W.2d 334, 337 (Mo.App.1976). There is no hint or flavor or suggestion of hand-picking here. The point is denied.

## III

Defendant claims that after sequestration, the jury separated and the state did not adequately show that during such separation the jurors were not subject to improper influences. He also contends that two deputy sheriffs who had not taken the jury keeper's oath, § 546.240, RSMo 1978, and who had transported the jury to and from their overnight lodgings, should not have been permitted contact with the jury. The alleged "separation" occurred when one sheriff's automobile, driven by one of the unsworn deputies and carrying three or

---

1. *State v. Jackson,* 643 S.W.2d 74, 76 (Mo.App.    1982).

four jurors from the motel to court on the second morning of trial, fell behind the other three vehicles in the procession by a half block.

A court may grant a new trial "[w]hen the jury has been separated without leave of the court, after retiring to deliberate on their verdict, or has been guilty of any misconduct tending to prevent a fair and due consideration of the case," § 547.-020(2), RSMo 1978. This section was construed in *State v. Dodson*, 338 Mo. 846, 92 S.W.2d 614 (1936) in which the court stated "... that if the separation or misconduct of the jury took place during the progress of the trial, the verdict will be set aside, unless the state affirmatively shows that the jurors were not subject to improper influences." Id. at 92 S.W.2d at 615. See also *State v. Edmondson*, 461 S.W.2d 713, 723–24 (Mo.1971).

■ The trial court ruled that the few moments in time and the short distance of separation of the last car from the other cars in the procession to court was not a true separation. We agree. See *State v. Cooper*, 648 S.W.2d 137, 140 fn. 5 (Mo.App. 1983).

■ The unsworn deputies' contact with the jurors, although prior to submission of the case, viewed as potential for "misconduct tending to prevent a fair and due consideration of the case," § 547.020(2), RSMo 1978, requires an affirmative showing by the state that such contact did not improperly influence the jury. *State v. Quinn*, 405 S.W.2d 895, 896 (Mo.1966).

In a hearing on a motion for new trial, both deputies were examined as to the nature and extent of any communication they had had with those jurors they drove to court. Aside from comments on the weather and one deputy's cautioning the jurors to watch their step in getting into the car, the record shows the only remarkable comment was made by one juror expressing excitement at riding in an emergency vehi-

cle with its emergency lights flashing. No prejudice to defendant resulted from these mundane comments.

In a similar case on this point, *State v. Betts*, 642 S.W.2d 604 (Mo.1982), an unsworn jury commissioner drove a group of sequestered jurors to their motel at the end of the day's proceedings in court. The court found no improper communications took place and no prejudice resulted. Id. at 606.

This point is denied.

## IV

■ In his final point on appeal, defendant contends that the trial court had no jurisdiction in the case, the felony information being fatally defective because not signed by a properly qualified prosecuting attorney. § 545.240, RSMo 1978; Rule 23.-01. We disagree. The criticized deficiency is a formal defect and is not jurisdictional. Formal defects in an information are waived if not attacked on a motion to quash. *Walster v. State*, 438 S.W.2d 1, 3 (Mo.1969). Defendant proceeded to trial without attacking the validity of the information. He raised the issue for the first time after trial on a motion to dismiss.

■ Defendant's argument in essence is that on December 20, 1982, when Assistant Prosecuting Attorney Howard Hickman signed two felony informations charging defendant with crimes, he had not been duly appointed by Adair County Prosecutor Harry Farr under Section 56.240, RSMo 1978.

That section reads:

The prosecuting attorney in counties of the third[2] and fourth class may appoint one assistant prosecuting attorney who shall possess all the qualifications of a prosecuting attorney .... The appointment of said assistant prosecuting attorney shall be made in writing and filed by the prosecuting attorney, and such assistant prosecuting attorney shall take

---

**2.** Adair County is a third class county, Official Manual of the State of Missouri 1983–84, p. 1167.

and subscribe to the oath or affirmation of office required of prosecuting attorneys, which appointment and oath of affirmation of office shall be filed in the office of the clerk of the circuit court of the county.

The state contends that, if not a de jure assistant prosecuting attorney, Hickman was, at least, a de facto assistant prosecutor. The state cites us to *Alleger v. School District No. 16, Newton County*, 142 S.W.2d 660 (Mo.App.1940), which states:

An officer de facto is to be distinguished from an officer de jure, and is one who has the reputation or appearance of being the officer he assumes to be but who, in fact, under the law, has no right or title to the office he assumes to hold. He is distinguished from a mere usurper or intruder by the fact that the former holds by some color of right or title while the latter intrudes upon the office and assumes to exercise its functions without either the legal title or color of right to such office. Where one is actually in possession of a public office and discharges the duties thereof, the color of right which constitutes him a de facto officer, may consist in an election or appointment, holding over after the expiration of his term, or by acquiescence by the public for such a length of time as to raise the presumption of a colorable right by election, appointment or other legal authority to hold such office. The duties of the office are exercised under color of a known election or appointment which is void for want of power in the electing or appointing body, or for some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public. (Quoting *State ex rel. City of Republic*

*v. Smith* [345 Mo. 1158], 139 S.W.2d 929, 933 (1940) quoting McQuillin, Municipal Corporations § 500 at 204 (2d Ed., Rev. Vol. 2)).

142 S.W.2d at 663.

In early 1981, Prosecutor Farr had orally appointed Mr. Hickman to the position of Assistant Prosecuting Attorney Hickman performed the duties of the office and in return received a salary paid him by the county treasurer. In early 1983, Prosecutor Farr was elected to a second term and orally renewed Hickman's appointment as assistant prosecuting attorney. He continued to perform the duties of the office and to draw a salary from the county treasury.

On March 17, 1983, prior to the commencement of Steven VanSickel's trial, Prosecutor Farr executed a written document appointing Hickman to the assistant prosecutor position, the document was filed with the Adair County Circuit Clerk, the oath of office was administered, and Hickman subscribed his name to the oath. Hickman, having been in possession of the assistant prosecuting attorney position and having exercised the duties of that position for over two years, acted under a color of right consisting of his oral appointment by Prosecuting Attorney Farr. We note that Hickman was a de jure assistant prosecuting attorney as of March 17, 1983, the first day of appellant's trial. We hold that on December 20, 1982 Hickman was a de facto assistant prosecuting attorney and his acts in signing the informations charging appellant were valid.

■ Moreover, defendant's argument fails under the statute of jeofails, § 545.-030, RSMo 1978 [3] and Rule 23.11.[4] The signing of an information is a formal act not affecting substantial rights. Such a

---

**3.** 1. No indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected:

....

(18) For any other defect or imperfection which does not tend to the prejudice of the

substantial rights of the defendant upon the merits.

**4.** No indictment or information shall be invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, because of any defect therein which does not prejudice the substantial rights of the defendant.

deficiency in form would not be a jurisdictional one affecting the validity of the information. See *Walster v. State*, 438 S.W.2d at 3; *State v. Tierney*, 584 S.W.2d 618, 621 (Mo.App.1979).

His last point is denied.

Judgment affirmed.